[681 NYS2d 826]

Carolyn Baraby, Appellant-Respondent, v Bryan Baraby, Respondent-Appellant.

Third Department, December 17, 1998

**APPEARANCES OF COUNSEL**

*Bartlett, Pontiff, Stewart & Rhodes,* Glens Falls (*Mark E. Cerasano* of counsel), for appellant-respondent.

*Asadourian & Johnston,* Plattsburgh (*Ara Asadourian* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

CARDONA, P. J.

The parties married in 1978 and have two children, Tanner (born in 1982) and Troy (born in 1986). Plaintiff commenced an action for divorce in February 1995. In November 1995, the

parties separated and have shared physical custody of the children on an equal basis by alternating weeks. Several child support orders have been issued setting and adjusting defendant's child support obligation. In July 1997, the parties executed a separation agreement which continued their custody arrangement and resolved all other ancillary issues except child support.

That issue was tried before Supreme Court which applied the Child Support Standards Act (Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) and calculated the parties' combined parental income according to the three-step statutory formula (*see*, Domestic Relations Law § 240 [1-b] [c] [1]-[3]). It then applied the proportional offset method* initially embraced by our Court in *Matter of Holmes v Holmes* (184 AD2d 185, *after remand* 237 AD2d 699, *lv denied* 90 NY2d 802) and found unworkable in *Matter of Simmons v Hyland* (235 AD2d 67, 70; *see*, *Bast v Rossoff*, 91 NY2d 723, 732, *supra*). In doing so, the court reduced each party's monthly child support obligation by half and "netted out" those amounts to arrive at a support amount to be paid by defendant to plaintiff.

As a result, defendant was directed to pay plaintiff $365 per month for 1995, instead of $1,325, and $453 per month for 1996 and 1997, instead of $1,290. Supreme Court also gave defendant credit against his child support obligation for voluntary payments of $680 per month for the months of November 1995 through and including July 1996. Additionally, the court determined that defendant overpaid plaintiff for the months of November and December 1995 as well as January to July 1996, in the amounts of $630 and $1,589, respectively. The court permitted defendant to recoup these sums from future child support payments in an amount not to exceed $50 per month. Finally, the court directed defendant to pay plaintiff 77% of her childcare expenses. Both parties appeal.

█ Defendant argues that the only logical way to apply the CSSA to cases of equal shared custody is to equally divide between each parent the combined child support obligation arrived at by application of the three-step formula. We disagree. It is now settled that "[s]hared custody arrangements do not alter the scope and methodology of the CSSA" (*Bast v Rossoff*, *supra*, at 732). The Court of Appeals has explicitly rejected use of the proportional offset method in shared custody cases (*see*,

---

* This method reduces each parent's pro rata share of the basic child support obligation by the percentage of time each spends with his or her child (*see*, *Bast v Rossoff*, 91 NY2d 723, 730).

*id.,* at 732). The three-step statutory formula of the CSSA for determining the basic child support obligation must be applied in all shared custody cases (*see, id.,* at 728-729) and the noncustodial parent directed to pay a pro rata share of that obligation unless the court finds that amount to be "unjust or inappropriate" based upon a consideration of the "paragraph (f)" factors (Domestic Relations Law § 240 [1-b] [f], [g]; *see, Bast v Rossoff, supra,* at 729). We recognize that *Bast* did not specifically address how to apply the CSSA in cases of equal shared custody.

Nevertheless, we interpret *Bast* as requiring application of the CSSA to such situations to assure that children will realize the maximum benefit of their parents' resources and continue, as near as possible, their preseparation standard of living in each household. In order to effectuate this goal, where, as here, the parents' custodial arrangement splits the children's physical custody so that neither can be said to have physical custody of the children for a majority of the time, the parent having the greater pro rata share of the child support obligation, determined after application of the three-step statutory formula of the CSSA, should be identified as the "noncustodial" parent for the purpose of support regardless of the labels employed by the parties (*cf., Bast v Rossoff, supra,* at 728). That parent must be directed to pay his or her pro rata share of the child support obligation to the other parent unless "the statutory formula yields a result that is unjust or inappropriate" (*Bast v Rossoff, supra,* at 729). In that event, "the trial court can resort to the 'paragraph (f)' factors and order payment of an amount that is just and appropriate" (*Bast v Rossoff, supra,* at 729). Since Supreme Court applied the proportional offset methodology, the matter must be remitted for a recalculation of defendant's child support obligation. Prior to remittal, we address other pertinent issues raised by the parties.

First, as both parties concede, Supreme Court incorrectly computed the FICA deductions for 1995, 1996 and 1997 by applying the 7.65% rate to all of defendant's income instead of applying the old-age survivors and disability insurance (hereinafter OASDI) rate of 6.2% to defendant's wages within the OASDI wage base, which was $61,200 for 1995, $62,700 for 1996 and $65,400 for 1997 (*see,* Internal Revenue Code [26 USC] § 3101 [a]; 59 Fed Reg 54464, 60 Fed Reg 54751, 61 Fed Reg 55346).

Next, we find that Supreme Court erred in subtracting $9,000 of defendant's claimed $16,434 in business losses from

his 1996 gross income of $76,065. Of the $9,000 claimed, $8,688 was allowed for depreciation in Baraby Development and the parties' Keesville apartment house. There was evidence that business expenses related to these jointly owned enterprises were partly paid by the parties' home equity loan which will be repaid from the proceeds of the sale of their jointly held real estate. Because defendant failed to prove that the depreciation was an actual out-of-pocket expense incurred by him alone (*see, Matter of Barber v Cahill*, 240 AD2d 887, 888; *Matter of Westchester County Dept. of Social Servs. [Rosa B.] v Jose C.*, 204 AD2d 795, 798; *see also, Blaise v Blaise*, 241 AD2d 680, 682) and failed to adequately substantiate the remaining business losses, the $9,000 deduction from defendant's gross income should have been disallowed for 1996. Furthermore, given defendant's testimony that no more business losses were anticipated for 1997, the $9,000 deduction from the calculation of defendant's 1997 gross income was not proper.

Plaintiff further contends that defendant should not have been credited for voluntary payments of $680 per month made from November 1995 through July 1996. Although defendant would ordinarily be entitled to a credit against any retroactive support obligation for voluntary payments made after the commencement of the action (*see*, Domestic Relations Law § 236 [B] [7] [a]; *Petrie v Petrie*, 124 AD2d 449, 451, *lv dismissed* 69 NY2d 1038), here there was insufficient proof adduced by defendant that he actually paid support during the period in question. Inasmuch as it appears that proof of the voluntary payments was improperly drawn from defendant's posttrial memorandum rather than from the record evidence (*see, Matter of Hartle v Cobane*, 228 AD2d 756, 757), Supreme Court erred in utilizing it as a basis for the calculation of a credit.

We further agree with plaintiff that Supreme Court erred in directing recoupment of defendant's alleged overpayments of child support. The CSSA contains no provision authorizing recoupment for overpayments of child support. As previously noted, the statute contemplates a credit for past payments of temporary support but only in the context of fixing a retroactive support award (*see*, Domestic Relations Law § 236 [B] [7] [a]; *Foxx v Foxx*, 114 AD2d 605, 607). Thus, the CSSA does not alter the strong public policy against restitution or recoupment of support overpayments evident in prior case law (*see, Foxx v Foxx, supra*, at 607; *Rodgers v Rodgers*, 98 AD2d 386, 390, *appeal dismissed* 62 NY2d 646; *Grossman v Ostrow*, 33 AD2d 1006).

Finally, we do not agree with defendant's argument that Supreme Court erred by directing him to pay 77% of plaintiff's child care expenses beyond the summer school vacation of 1997. Plaintiff testified that she had just started using daycare services every other week when the children were in her custody and would use those services "at least through the summer" but "probably not" during the school year. Because there is no evidence in the record that plaintiff discontinued daycare services during the school year, we cannot say, under the particular circumstances here, that the court abused its discretion. If defendant believes that plaintiff is not incurring childcare expenses his remedy is an application to modify the order.

MERCURE, WHITE, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) directed defendant to pay child support to plaintiff at the rate of $365 per month for 1995 and $453 per month for 1996 and 1997, (2) determined that defendant overpaid plaintiff for the months of November and December 1995 as well as January to July 1996, in the amounts of $630 and $1,589, respectively, and (3) directed defendant to recoup these sums from future child support; matter remitted to the Supreme Court for a redetermination of child support not inconsistent with this Court's decision; and, as so modified, affirmed.