OPINION OF THE COURT
W. Dennis Duggan, J.
The issue in this case is how to determine the appropriate amount of child support in a combination shared and split custodial arrangement.[1] This matter is before the court on the *293 respondent father’s objections to the support magistrate’s findings of fact and order.
These parents divorced after a 17-year marriage. The father is a doctor and the mother is a pharmacist. They have four children, ages 19, 13, 7 and 6. The order of custody provides that physical custody of the two younger boys is shared. The daughter resides with the mother, and the oldest boy with the father. Accordingly, the mother and father have equal shared custody of two children and split custody of the other two children.
To introduce our analysis of this issue, it is helpful to examine some simplified illustrations. Let’s look at three families, each with four children. As in this case, assume that the mother and father each have custody of one child, that they share equally the custody of two other children and that they have CSSA income as follows:
Jones Family
Smith Family
Adams Family
Dad
$100,000
$150,000
$200,000
Mom
100,000
50,000
0
$200,000
$200,000
$200,000
1. Jones Family: One can intuitively see that no support should flow to either parent of this family. Assuming all other things being equal, each household has equal financial resources to support an equal number of children for an equal amount of time. No matter what mathematical formula was used, the child support obligation of each parent should net out.
2. Smith Family: This case is governed by the Baraby doctrine (Baraby v Baraby, 250 AD2d 201 [1998]), which holds that, in shared custody situations, the higher incomed parent is deemed the noncustodial parent for child support purposes. The father in the Smith family would owe to the mother 29% of his income for three children or $43,500. The mother would owe $8,500 to the father for the one child fully in his custody. The mother would receive a net child support payment of $35,000 and have a household income of $85,000. Similarly, the father would have a household income of $115,000. In this scenario, the father would have 35% more income than the mother with which to support the children in his care. (Tax consequences would probably narrow this disparity to around 25%.)
*294 In looking at this illustration, one can see why the Court of Appeals rejected the proportional offset method in Bast v Rossoff (91 NY2d 723 [1998]). Under a proportional offset method, the amount of time a child spends with one parent is used to offset or reduce that parent’s support obligation for that child. In this scenario, the father would owe only $28,000 in child support to the mother. This is because the father’s support obligation for the two children who live with him 50% of the time would be reduced by 50%. The mother would still pay the father 17% of her income or $8,500 for support of the child in the father’s custody. The net household incomes would be as follows:
Father
Mother
$150,000
Income
$50,000
- 28,000
Child support paid
- 8,500
+ 8,500
Child support received
+ 28,000
$130,500
Net household income
$69,500
Under the proportional offset method, the father has almost 100% more income to support the children. The proportional offset method, except when the incomes are equal or very close, is inherently unfair to children. Though it has a facial fairness, the high wage earner gets a very large obligation cut in half while the lower wage earner gets a much smaller obligation cut in half.
3. Adams Family: This presents the same situation as the Smith family in example 2, except that the father would receive no support from the nonincomed mother. Under a strict CSSA formula approach, the mother would have a household income of $58,000 and the father, $142,000. In this case, while the parents have equal child rearing responsibilities, the father has nearly 2.5 times the money to apply to that enterprise.
With these examples in mind, what the court must do is to compute support according to the CSSA formula, following the Bast and Baraby guidelines and then answer two questions. First, does applying the full CSSA percentage' to all income above the cap result in an unjust or inappropriate award of child support? Second, what CSSA percentage should be applied to income above the cap to produce a just and appropriate child support award? The guidelines used to answer these questions *295 are the deviation factors set forth in Family Court Act § 413 (1) (f).[2]
*296 We start with the premise that children who have been raised in a long-term marriage ought to continue to be raised in an environment that approximates that which would have existed had the parties remained married (Zaremba v Zaremba, 237 AD2d 351 [1997]). Making a standard of living determination can involve some educated guesswork and general assumptions that might not apply to any particular family. For example, it would be well within sound parental judgment for Mr. and Mrs. Bill Gates, the richest parents in the world, to decide that they would not provide their children with computers and TV’s in their bedrooms, a car upon reaching 16, summer camp, and trips to Disney World or even that they would not pay for college. However, once parents separate and cannot agree on issues of child support, the court is called on to substitute its legislatively guided judgment in place of the parents’. This is an area fraught with the potential for error because a court can never make as good a judgment as two parents acting together could or should, especially when the parental judgment contains noneconomic factors. An example at one edge of the spectrum would be the lifestyle decisions made by an Amish family that are based on religious considerations and are independent of family income.
The Fuhrman-Vuoncino family has a combined CSSA income of $270,000 per year (these numbers are rounded for ease of reading. Exact numbers will be used in the order): $200,000 comes from the father and $70,000 from the mother. The CSSA formula, applied to all income, would require the mother to pay $12,000 in child support to the father for one child. The father, in turn, under the Baraby doctrine, would owe 29% of $200,000 or $58,000 to the mother. The mother, receiving a net child support of $46,000, would have a household income of $116,000. The father would have a net household income of $154,000. Since both parents have equal responsibilities for equal numbers of children for equal amounts of time, the court must determine if an application of the full CSSA percentages to all amounts over the $80,000 cap (that results in the father having 33% more income than the mother) produces a just and appropriate amount and allocation of child support.
*297 It should, be first noted that the reasonable needs of three children can certainly be met with a household income of $116,000 per year. Accordingly, given the father’s other voluntary expenditures, there are no grounds to consider an award of child support that is above the CSSA formula amount — even considering the Zaremba standard of living rule (see, supra). However, is there a sound basis for reducing the father’s child support obligation by applying some fraction of the CSSA percentage to the income that exceeds the cap? The court finds there is not.
First, because the father is able to legally shift some ordinary expenses to tax deductible business expenses and to take all four personal tax exemptions, he receives a significant reduction in taxable income that is not available to the mother. Second, the father correctly points out his significant expenditures for one son attending a private school and for another son’s attendance at his religion’s day care center. However, those items are paid by the father because he successfully bargained for the right to select the children’s educational and day care settings. (In June 2002, the parents entered into a settlement agreement before this court whereby the mother conceded the right to choose the two younger children’s schools to the father. He, in turn, agreed to pay the full tuitions.) The father also correctly notes that the support magistrate directed him to maintain the health insurance, another significant expense, even for a medical doctor. On the other hand, the mother was directed to pay a pro rata share of the oldest son’s college expenses. The court finds that these factors offset each other.
The other expenses paid by the father, which he claims justify a downward adjustment, are done voluntarily out of his love for his children. Though certainly commendable, they don’t provide a basis to reduce the amount of support available to the mother to apply to the children when they are in her care.
The father also objects that some version of an offset formula was not used when determining his child support obligation in the split custody situation regarding the two oldest children. As noted above, in Bast v Rossoff (91 NY2d 723, 730 [1998]), the Court of Appeals held that the Legislature did not authorize the use of the offset formula in shared custody cases. Bast teaches that, if the CSSA formula does not produce a fair child support obligation, then only the section 413 (1) (f) factors can be used to deviate above or below the formula amount.
*298 Those factors are broad enough to consider the amount of time that the children are in the care of each parent. The support magistrate correctly determined that this was both a shared custody case and a split custody case. Based on that determination, the support magistrate deducted the mother’s support obligation for one child from the father’s support obligation for the three other children. This offset, which is really just an accounting process, is the only one permitted by the CSSA. Therefore, this objection is denied.
The father’s next objection is that the reasons for applying the statutory formula to the combined parental income in excess of $80,000 were not sufficiently articulated. When a court applies the statutory percentage to combined parental income over $80,000, it must articulate reasons related to the statutory factors (Cassano v Cassano, 85 NY2d 649 [1995]).
In this case, numerous factors were taken into consideration regarding the application of the CSSA formula to the income in excess of $80,000. The support magistrate stated that she considered the following:
1. The mother is a pharmacist and the father is a self-employed physician.
2. The father’s earning capacity is three times that of the mother.
3. The mother has no substantial assets, bank accounts, investments, or retirement plans. However, the father has retirement, health insurance benefits and substantial investment accounts.
4. The father claims all four children as tax exemptions.
5. The equal shared physical custody of two children.
6. The monetary and nonmonetary contributions each make.
7. The standard of living the children would have enjoyed had the household remained intact.
The support magistrate’s determination on this issue is sufficiently articulated and supported by the record. This objection is denied.
The father’s third objection is that the children’s actual needs were not considered when applying the statutory formula to the combined income in excess of $80,000. Cassano, in discussing the CSSA, states that the legislative intent in passing the CSSA was to shift the emphasis from a needs based analysis to one that emphasized “the total income available to the parents and the standard of living that should be shared by the child” (Cas *299 sano at 652). In other words, as stated in the Governor’s Approval Memorandum “the children will share in the economic status of both their parents” (Cassano at 652 [internal quotation marks omitted], quoting Governor’s Approval Mem, 1989 NY Legis Ann, at 250). In Gluckman v Qua (253 AD2d 267 [1999]), the Appellate Division, Third Department, cautioned that the general objectives of the statute should not be misread to completely eliminate an analysis of the children’s needs as one of the many factors to be considered by the court and that the CSSA percentages cannot be blindly applied to all income above the cap. A review of the record shows that the Family Court Act § 413 (1) (f) factors were duly considered and the statutory guidelines were followed. The support magistrate’s determination struck an appropriate balance between the Gluckman and Zaremba considerations and followed the guidelines of Cassano. This objection is denied.[3]
The father’s fourth objection is that the amount of child support ordered is too high given the circumstances of the case.
*300 As noted, earlier, the father’s payment of a net child support to the mother of $46,000 per year leaves her with a yearly household income of $116,000 and the father retains a yearly household income of $154,000. Each parent has exactly equal child rearing responsibilities yet the father has 33% more income to fulfill this responsibility. Given that the parents were an intact family for 17 years, this result can hardly be viewed as unjust or inappropriate. Having concluded that a support award in excess of the formula was not warranted, neither is an award that is less than the formula. The support magistrate’s decision to apply the full CSSA percentage to all amounts of income over the cap is just and appropriate and fully supported by the record.
Based on the above, the father’s objections are denied and the support magistrate’s decision and order is sustained.

. Family Court Act § 413, which contains the meat of the Child Support Standards Act (CSSA), is the most convoluted and opaque section of the Family Court Act. It probably could give a fair run against the best the tax code has to offer. The section runs nine full pages in the Yellow Book. It has 87 subsections and nearly 4,000 words. Its subsections are denominated by Arabic numbers (alone and inside parentheses), Roman numbers, lowercase letters and uppercase letters. For example, one could cite to section 413 (1) (b) (5) (vii) (H). In the all important provision, section 413 (1) (f), which contains the deviation factors, the introductory clause is separated from the concluding clause by 10 subparagraphs containing 370 words. Can anyone doubt that the Legislative Bill Drafting Commission is populated by Tolkienesque creatures, terminally allergic to plain English, who seek nothing but to sadistically *293 torture lowly Family Court Judges with circumlocutions that would confound a Mensa convention collectively or Benjamin Cardozo reading alone.

. Making literal sense of section 413 is not easy. Its prescriptions are not set up in any logical sequence. Here is why. One must wade 60 subsections into the law to reach the primary directive: “The Court shall calculate the basic child support obligation . . . .” One must then step back 58 subsections to learn that “basic child support obligation” is the sum derived by adding the amounts determined by the application of clauses (2) and (3) of paragraph (c) of this subdivision except as increased pursuant to clauses (4), (5), (6) and (7) of such paragraph. By the application of 32 more subparagraphs, one arrives close to the end of the rainbow — “combined parental income.” It is against this number that the CSSA percentages and $80,000 cap come into play. The next step is to apply the full statutory percentages to the first $80,000 of income, which is easy enough. (Had the cap been indexed for the cost-of-living, it would now exceed $120,000.) For the amount of income that exceeds the cap, the child support is computed by using the section 413 (1) (f) deviation factors, the child support percentage — or both. But how to do that? Here, the statutory directives become circular. At this point, the court should now have fulfilled its obligation pursuant to section 413 (1) (f) to calculate the basic child support obligation, having taken into account all of the factors contained in section 413 (1) (f) (1) through (10). However, if having done what the law directs results in a “support obligation [that] is unjust or inappropriate,” the court must “order the non-custodial parent to pay such amount of child support as the court finds just and appropriate.” (Family Ct Act § 413 [1] [g].) Now one might ask how the court could come up with an unjust or inappropriate child support award if the court did exactly as directed by the statute and properly considered all the factors. And, how would the court determine it was unjust and inappropriate if the court has just faithfully applied the law to come up with what should have been a just and appropriate award? Why to determine unjustness it would apply the same factors it just applied to find justness! So having then determined that following the law resulted in an award that was unjust and inappropriate, how would the court then determine a just and appropriate award? For the answer to this question, one turns to section 413 (1) (g). There you will discover this gem: “Where the court finds that the non-custodial parent’s pro rata share of the basic child support obligation is unjust or inappropriate, the court shall order the noncustodial parent to pay such amount of child support as the court finds just and appropriate . . . .” Huh? Wasn’t that what the court was supposed to do to begin with? The paragraph goes on to state that the court must state the factors it considered in setting the new amount. These must be different factors than the ones listed in section 413 (1) (f) because the court already applied those and came up with an unjust award. But the statute does not state what the other factors are. In real life, I believe judges do the following. First, everyone knows that for the computation of basic child support pursuant to the CSSA formula the custodial parent’s income is just mathematical window dressing. Also, if the custodial parent made, say, $300,000 and the noncustodial parent made only $50,000, in that case, a court would apply 0% of the income over the cap. For cases that range up to around $300,000 of combined parental income, courts would apply the full CSSA percentages and see what the outcome is. If it looks unfair to the paying spouse, a downward adjustment of the percentages would *296 be made until a fair amount was reached. If the children had extraordinary needs, or there were extenuating factors the amounts could be increased. For combined parental income that exceeds $300,000, the deviation factors most probably would have to be used to reach a just result. And, of course, much would depend on the ratio of each parent’s income to the other.

. On their face, the findings in Gluckman appear not to support the decision in this case. In Gluckman, the father had income of $245,000 and the mother had income of $38,000. The Appellate Division determined to apply a 15% factor to the income over the $80,000 cap instead of 25%. This resulted in a child support award of $44,000. This produced a yearly household income for the mother of $130,000 (which included her second husband’s income of $48,000). The father, in turn, retained a household income of $201,000. Given that the father’s household income would still exceed the mother’s by 55% it is difficult to understand how the hearing examiner’s decision to apply the full CSSA formula to all income over the cap was an abuse of discretion. This would have resulted in a child support award of $61,250 and a retained household income of the father of $183,750. Accordingly, the hearing examiner’s award reduced the father’s income less than 9% below that of the Appellate Division’s finding. When looked at from this viewpoint, what was an abuse of discretion to the Appellate Division appears to this court to be just a difference of opinion. The salient differences between this case and Gluckman are these. In Gluckman, the mother’s financial position was substantially enhanced by her second husband’s income. (The Court does not state if the father had an income producing spouse.) In this case, the mother has no corresponding financial help. In Gluckman, the parties had been married for only a year and their children appear never to have lived for any length of time within an intact family. In this case, the parties had been married for 17 years. In Gluckman, the parties fixed support at the time of their divorce and then it was modified upward twice over the next 11 years. The circumstance reviewed on appeal involved the increased earnings of the father after the divorce. In this case, the parents’ earning potentials, actual income and, accordingly, their standard of living, were developed by mutually enhancing efforts during their 17-year marriage. Accordingly, the court finds that in this case, the available income and standard of living considerations should predominate over the needs of the children consideration in reaching a proper result.