*467 OPINION OF THE COURT
W Dennis Duggan, J.
Issue
The Support Magistrate increased the petitioner father’s child support obligation by $1,000 per month. This court affirmed. The Appellate Division reversed (Matter of Overbaugh v Schettini, 103 AD3d 972 [2013], lv denied 21 NY3d 854).[1] Should the father now receive a credit for the excess child support (which may amount to almost $29,000) paid pursuant to the order of the Support Magistrate when that order was affirmed by this court but vacated by the Appellate Division?
Holding
The court holds that the father should receive the credit allowed by Family Court Act § 439 (e) for excess child support paid from the date of filing of the mother’s modification petition *468 until the date of this court’s decision that affirmed the Magistrate’s decision. The grounds for this ruling are that the reversal order of the Appellate Division created a “new order” of the Family Court within the meaning of Family Court Act § 439 and payments made in excess of a new order are entitled to be credited against future child support obligations.
The court also holds that the father should receive a credit for the excess child support paid from the date of this court’s order that affirmed the Magistrate until the date of the Appellate Division order that reversed Family Court’s order regardless of whether it can be characterized as a new order. This credit is based on the rulings of the Court of Appeals in Matter of Spencer v Spencer (10 NY3d 60 [2008]) and Johnson v Chapin (12 NY3d 461 [2009]) that held in a proper case, a credit should be granted. This is one of those proper cases because not granting a credit to the father would be manifestly unfair.
Procedural History
After the Appellate Division’s reversal, the father filed a petition before the Support Magistrate seeking an order that would compel the Support Collection Unit to credit his account for the amounts he paid above the original order that was reinstated by the Appellate Division. The Magistrate dismissed his petition and the father now objects.
Discussion
The practical result of the Appellate Division’s decision was that the father was overcharged for his child support obligation due to the Magistrate’s order that was affirmed by this court. Whether he should be reimbursed for that overcharge is the subject of this decision. The financial aspects of this case can be summarized as follows (amounts are rounded):
Child support paid pursuant to the Magistrate’s modification order, from the date of filing of the modification petition to the date of the Appellate Division’s reversal. $61,800
Child support owed pursuant to original judgment of divorce over that same time period: $32,800
Amount of excess child support paid: $29,000
On his motion, the father insists that he is only asking for a “credit.” He concedes that recoupment or restitution is against public policy. The mother contends that the father’s argument *469 is a wolf in sheep’s clothing; that he is trying to pull the wool over the court’s eyes by calling a credit what is clearly a request for recoupment or restitution. The court finds that this debate in nomenclature is just a rose by any other name. It is the underlying principles of law that entitle the father to a credit not how the relief is labeled.[2]
While the objections and appeal were pending, the father paid the child support in the amount ordered by the Magistrate. The father was paying $1,500 per month for child support pursuant to the judgment of divorce. That amount was increased to $2,500 per month by the Magistrate’s order. This increased his child support obligation by $1,000 per month. No request for a stay of the order increasing his support was made either to Family Court or to the Appellate Division. (See CPLR 5519 [c]; Family Ct Act § 1114.)[3]
Family Court Act § 439 (e) guides our foray into this legal thicket. That section provides in relevant part as follows:
“Pending review of the objections and the rebuttal, if any, the order of the support magistrate shall be in full force and effect and no stay of such order shall be granted. In the event a new order is issued, payments made by the respondent in excess of the new order shall be applied as a credit to future support obligations. The final order of a support magistrate, after objections and the rebuttal, if any, have been reviewed by a judge, may be appealed pursuant to article eleven of this act” (emphasis added).
This language can implicate the interplay of several orders but ultimately the court must determine if payments have been made pursuant to a “new order” because the credit applies only to payments made in excess of a new order. It is the father’s po *470 sition that the order of the Appellate Division reinstating the old order makes that old order a new order.
As a general rule, the obligation to pay court ordered child support will be retroactive to the date the petition was filed (Family Ct Act § 449 [2]). If the final order requires a payment higher than what was initially ordered, that higher amount must be paid retroactive to the filing date adjusted for amounts already paid (Family Ct Act § 440 [1] [a]). If the final order requires the payment of an amount less than any temporary order, there is generally no right to obtain restitution or recoupment for amounts paid in excess of what was required by the final order. This policy against restitution or recoupment for an overpayment of child support is grounded upon the presumed fact that the monies previously transferred have already been used to support the children, and therefore ordering a forced return of such payments may well cause a hardship (see e.g. Coleman v Coleman, 61 AD2d 757 [1978]). For this reason, there is a strong public policy against restitution or recoupment of child support overpayments.[4]
Family Court Act § 439 (e) has three basic components, the first two of which are relevant here. First, the Magistrate’s support order cannot be stayed while objections are under review by the Family Court Judge. Once the Family Court Judge issued his order, that Judge could stay that order pending appeal or a Justice of the Appellate Division could do the same. In such cases, the appellant could be required to file an undertaking or the Support Collection Unit could be required to hold some portion of the payments in escrow (see Family Ct Act § 1114; CPLR 5519 [c]).
Second, “in the event a new order is issued, payments made by the respondent in excess of the new order shall be applied as *471 a credit to future support obligations” (emphasis added). Reading the section as a whole, taking into account that during the time frame in question no stay may be granted, a “new order” certainly includes ones issued by the court or by the Magistrate upon remand. If either of those orders is less than the Magistrate’s order which was the subject of the objections, then the payor gets a credit for excess payments made pursuant to the Magistrate’s final order. It should be noted that this scheme is unbalanced because no credits are available for any higher amounts paid pursuant to a magistrate’s temporary order. Those funds are presumed to have been spent by the custodian. But that same logic would apply to amounts paid pursuant to the Magistrate’s final order for which a credit is available. The question being raised on these objections is whether the Appellate Division’s order resurrecting the original support order constitutes a “new order.”
In this case, there are four relevant orders. (1) The original order in the parties’ divorce decree. (2) The order of the Magistrate modifying that original order. (3) The order of the Family Court Judge affirming the Magistrate’s order. (4) The order of the Appellate Division reinstating the original order of support. Which of these orders constitute a “new order” to which Family Court Act § 439 (e) applies and which would then entitle the father to a credit against future support payments?
First, as noted earlier, if any of the orders listed above increased the child support payment, the father would be assessed arrears to the date the modification petition was filed. The orders of the Magistrate and the Family Court Judge are, no doubt, new orders by any commonsense understanding but the statute allowing a credit does not apply to those orders because the father did not make any payments “in excess of the new order.” The father did make payments in excess of the original order. Whether that is now a new order because of the Appellate Division’s reversal presents a dilemma.
One can see that the credit allowance is a look back provision. If the court, after reviewing objections, reduces the support obligation, then the payor will receive a credit for any excess amounts paid pursuant to the Magistrate’s higher order. This makes sense because the law prohibits a stay of the Magistrate’s order so there is no way for a payor to insure himself against the immediate imposition of an order issued in error. So, does the ability to apply for a stay provide sufficient insurance against having to make payments that are later determined to be invalid?
*472 In reviewing the plain language of the statute, it is clear that the only circumstance to which the credit granting language applies is when the Family Court, after reviewing objections from the Magistrate’s decision and order, issues a “new order” which reduces the father’s child support obligation. In that case, he would receive a credit for any excess payments made between the time the Magistrate issued his final order until the date of the court’s “new order,” at which time, he would presumably start paying pursuant to the new order which lowered his support. Based on time requirements set by statute and court rule, the Family Court’s final order should normally be no more than about four months from the date of the initial filing. It is that time during which a payor is exposed to an excess payment situation but with a credit applied to future child support payments allowed.[5]
It is clear that this court, in affirming the Magistrate, did not issue a “new order.” Even if this court’s order could be considered to be new, no payments made by the father were in excess of that new order. Accordingly, the triggering event which would entitle the father to a credit pursuant to Family Court Act § 439 (e) did not occur in this case — unless the Appellate Division’s order can be considered to be new.
While this court left the Magistrate’s order of January 2012 stand, the Appellate Division, in dismissing the mother’s modification of support petition, left the support provisions of the judgment of divorce stand. It would seem to be a sizeable linguistic stretch to consider that an order of reversal by the Appellate Division, which reinstates an old order, creates a new order. However, it is a stretch with merit.
The Appellate Division, in effect, modified the Family Court’s new order by granting the father’s objection. The new Family Court order now provides that the Magistrate’s decision is overruled, the father’s objections are granted and the mother’s petition is dismissed. This now means that the father paid more than required by the “new order” that Family Court should have issued. Therefore, he should, by any standard of fairness, now be entitled to the credit allowed by Family Court Act § 439 (e) for the excess child support he paid. This credit would be applied from the date of the filing of the petition on April 28, 2011, until the date of the Family Court’s order on April 17, *473 2012. Put more simply, the law cannot countenance a situation where the father is liable for up to $29,000 in excess child support when Family Court gets it wrong but he would get a credit for up to $29,000 when Family Court gets it right. But what of the $17,000 of that amount in excess that was paid while the appeal was pending? Logic commands that the same result should occur but in this case that logic has been halted. Matter of Paris v Paris (226 AD2d 381 [2d Dept 1996]) is controlling on this point.
“In construing the statute according to its plain language, it is clear that the term ‘new order’ refers to an order made by the Judge, or the [Support Magistrate] upon remand, based upon a review of properly filed written objections and rebuttal, if any, to a previously issued ‘final order.’ Consequently, the crediting process enumerated therein applies in those situations where a final order is objected to, reviewed, and subsequently superseded by a new order” (Paris at 383-384).
The holding in Paris could be considered dicta with respect to the issue raised in this case because the issue of an Appellate Division order being considered a “new order” for child support crediting purposes was not the exact issue under review in Paris. However, because it is a clear statement of the law that is right on point, if Family Court Act § 439 (e)’s crediting provision is to be applied to an Appellate Division reversal order, the Appellate Division will have to so hold. This court finds that it must follow Paris on this issue.
The mother primarily relies on four cases to oppose the father’s claim for a credit, the first three of which predate the enactment of Family Court Act § 439 (e), the predecessor of which contained no specific crediting language. Grossman v Ostrow (33 AD2d 1006 [1970]) is a case where the Family Court’s order for temporary spousal support was reversed. Upon remand, a credit was granted to the husband for excess support paid. The Appellate Division then reversed the credit provision, referring to the general public policy against such credits. In a decision contained in just 14 lines, the Court said: “Since the husband did not request or obtain a stay of the Family Court order, restitution or recoupment of payment made pursuant to it is not proper” (Grossman at 1006). This statement appears to be dicta but because of the brevity of the decision, one cannot tell for sure. In any event, the Court could not have meant that just requesting a stay makes recoupment or restitution proper *474 so it is not clear what the rule of law is on this point. Finally, this decision predates Court of Appeals holdings that allow a credit in a proper case.
In Rodgers v Rodgers (98 AD2d 386 [1983]), the Court upheld the retroactive application of a maintenance award. In noting the general rule, “that temporary payments made pursuant to a subsequently nullified court order could not be recovered either directly by restitution or indirectly by recoupment,” the Court went on to say, “while the court possessed] some discretion, a retroactive reduction should not be granted in favor of an individual who had wilfully flouted such an order” (Rodgers at 390). This statement clearly suggests that in a proper case, the granting of a credit would be a provident exercise of discretion.
In Foxx v Foxx (114 AD2d 605 [1985]), the husband sought a credit for maintenance and support payments he voluntarily made during a time when they were not owed. The Court reiterated the standard rule that Domestic Relations Law § 236 (B) (6) (a) and (7) (a) require a court to provide for retroactive payments of permanent maintenance and support only where the award is in excess of payments required by any temporary order. Notably, the Court went on to say that the cited section does “not require the granting of credits” (Foxx at 607), as opposed to saying that the section “prohibits the granting of credits.” This again suggests that in a proper case, an award of credits could be justified.
In Baraby v Baraby (250 AD2d 201 [1998]), the Third Department determined how the Child Support Standards Act (CSSA) should be applied to shared custodial arrangements in accordance with the Court of Appeals decision in Bast v Rosso ff (91 NY2d 723 [1998]) which disapproved the use of the “proportional offset” method of computing child support in those situations. (See also Matter of Holmes v Holmes, 184 AD2d 185 [1992].) On this issue, the Court held that the higher earning spouse “should be identified as the ‘noncustodial’ parent for the purpose of support” {Baraby at 204). This case is significant to the extent of its holding that “the CSSA does not alter the strong public policy against restitution or recoupment of support overpayments evident in prior case law,” but then cites to the Foxx, Rodgers and Grossman decisions for support (Baraby at 205). As noted, those three cases also lend support for the proposition that in a proper case, an exception to public policy should be made.
This, however, does not end the discussion because no public policy is absolute. Courts, as the repository of justice, must not *475 abide manifest unfairness and that is why every rule has exceptions. The Court of Appeals has recognized that the law does allow exceptions to this public policy. In Matter of Spencer v Spencer (10 NY3d 60 [2008]), the Court of Appeals decided that New York had no jurisdiction to issue an order of child support for an 18 year old who was most recently covered by an order of the State of Connecticut. The Court held that even though Connecticut ends a parent’s child support obligation when the child turns 18, as opposed to New York’s age 21, a New York court could not “modify” Connecticut’s order because it had no jurisdiction under the interstate compacts and federal law. The father paid child support pursuant to Family Court’s order while the matter was winding its way through the New York courts. The Court of Appeals, as a result of its main holding, also held that the father could seek a credit for the support he paid pursuant to the invalid New York order and that Family Court had the authority to order that credit. “[T]he father’s request to recoup payments he made to the mother as a result of the child support order issued by Family Court cannot be determined on this record and should, on remittal, be addressed by Family Court (including all offsets due the mother).” (Spencer at 69.)
In Johnson v Chapin (12 NY3d 461 [2009]), it was determined at trial that the husband’s income was significantly less than that upon which the temporary orders for maintenance and child support were based. The Court of Appeals approved the crediting of the excess maintenance against the equitable distribution award. However, it upheld the denial of a credit against excess child support, noting the strong public policy against such crediting. The Court did imply that in the right case (such as Spencer, no doubt), a credit could be granted. It stated, “nothing in this record shows it was error to deny that relief” (Johnson at 466). This obviously suggests that a proper record would support an order crediting for excess child support.
To date, there is little appellate guidance for Family Court to determine what type of record would support an order crediting a parent for excess child support. The Court of Appeals has clearly held a credit should be ordered when the Family Court was without jurisdiction to issue the order in the first place. Would such a credit be called for when there is no child in the other parent’s household to benefit from the order, such as if a father continued to pay for support for a child who died or if the child became emancipated and was self-supporting? Would the public policy considerations still prevent the granting of a credit *476 if a high temporary child support order was based on fraudulent income information supplied by the custodial parent? These questions need not be answered in this case but they illustrate an underlying principle; a credit should be allowed when it would be manifestly unfair to deny it. This is such a case and it closely parallels the circumstances that supported the granting of a credit in Spencer.
In Spencer, the Court of Appeals held, in effect, that both the Family Court and the Appellate Division misread the applicable law when support was ordered. In this case, the Appellate Division similarly held that this court misread the law when it ordered an increase in child support. It would seem to be too thin a distinction to permit a credit based on what law was misread (in Spencer, the Uniform Interstate Family Support Act; in this case, Family Ct Act § 451 [2] [a]) because the results are the same; a windfall for the custodial parent and a manifest unjustness for the noncustodial parent. Certainly, the public policy that supports the rule that credits should generally not be granted is at play in both Spencer and in this case in the same way. That is, one can presume that the custodial parent in each case spent the child support for its intended purpose and that requiring a payback could work a harm on the child. That is a proper consideration to be sure but in this court’s view, it does not support the ratification of an extralegal transfer of as much as $29,000 from one parent to another. As for harm to the child, the Family Court is quite capable of conducting a hearing to determine how any credit should be applied so that the child does not suffer harm.
A well known canon of statutory interpretation holds that what is included must therefore exclude that which is not (ex-pressio unius est exclusio alterius [McKinney’s Cons Laws of NY, Book 1, Statutes § 240]). If applied in this case, one could conclude that because the legislature determined that a credit should be allowed only in the limited circumstances covered by Family Court Act § 439 (e), that must mean that no credit may be applied in any other circumstance. However, there are sound reasons why this principle should not be applied and the Court of Appeals in Spencer laid down a blueprint. The mandatory credit allowance of Family Court Act § 439 (e) is a departure from the stated public policy that disallows such credits. In not allowing a stay but permitting a credit, the law recognizes that the time between when the Magistrate issues his order and when Family Court issues its order is relatively short. This *477 court finds little to support an interpretation that would validate a policy that a child support payor in effect gets the credit if he obtains a stay but he gets no credit if, for example, he cannot get a stay because he cannot afford an undertaking. “[JJustice should not only be done, but should manifestly and undoubtedly be seen to be done” (R v Sussex Justices, Ex Parte McCarthy, [1924] 1 KB 256, 259, [1923] All ER Rep 233 [Lord Hewart C.J.]). In this case, reversing and reinstating the original order without granting the father a credit would mean that justice was neither done nor seen to be done.
The court will conduct a hearing to determine the actual amount in controversy, the amounts to be credited and the schedule to apply those credits that will not work a hardship on the child.

. The Magistrate held that the mother was entitled to an upward modification of the child support. This modified the Family Court support order that was incorporated into the parents’ divorce judgment. This court affirmed the Magistrate’s decision, agreeing that the mother proved a substantial change in circumstances. The Appellate Division reversed, holding the substantial change in circumstance standard, that was legislated in 2010, but has long been the standard for modifying support orders, did not apply because this was an incorporated support order that took place before 2010. They held that a Family Court support order incorporated into a judgment of divorce before 2010 could not be modified unless the Boden standard was met (Overbaugh at 973; Matter of Boden v Boden, 42 NY2d 210 [1977]).
To modify a separation agreement incorporated into a judgment of divorce under the Boden rule requires the petitioner to prove that there has been “an unanticipated and unreasonable change in circumstances . . . [or] an unforeseen change in circumstances and a concomitant showing of need . . . or that the agreement was not fair and equitable when entered into” (Boden at 213).
It is not clear from any of the case law, otherwise than by assertion, why a Family Court support order that continues by agreement after the divorce should then be treated like a separation agreement and unlike any other Family Court support order. This gets more confused because in Matter of Brescia v Fitts (56 NY2d 132 [1982]), the Court of Appeals held that “a proceeding of this nature [i.e., one based on the Boden principles] is not properly brought in Family Court, because that court, lacking equity jurisdiction, is without power to set aside or modify the terms of the separation agreement” (Brescia at 139). Brescia went on to conclude that Family Court’s power to modify support orders comes from Family Court Act § 461 (b) (ii) which, up until the 2010 amendment, only required “that changed circumstances requires such modification.” Finally, this Judge, after 20 years in Family Court, confesses to not knowing what is meant by an “unreasonable change in circumstances.” If a circumstance is a set of facts that describes a situation, it can only mean that there are also unreasonable facts.

. The court finds that the father’s concession that recoupment or restitution is against public policy does not constitute an election of remedies that excludes relief based on another theory. In his request for relief, the father clearly asks for “an order correcting the defect, irregularity, error or omission or mistake of fact. . . and for such other and further relief as the law provides” (emphasis added). In this decision, the court is holding that in this case, an exception to established public policy should be made.

. The court finds that the father’s not applying for a stay is not relevant to the outcome of this case. He correctly notes that it is not likely that a stay would have been granted (see McKiernan v McKiernan, 223 AD2d 917 [1996]). In any case, there are many factors that would go into the decision to apply for a stay, including the ability to afford an undertaking. A just outcome should not depend on such matters, which, in any event, are outside the record in this case and which may have involved an intended legal strategy.

. A foolish consistency may be the hobgoblin of little minds (Emerson) but the obverse of the proposition that supports this public policy is also true — but the remedies are opposite. If a final order is higher than the temporary order, the law does compel a forced payment of retroactive support, even though it is unlikely that the payor banked funds to cover the arrears and it is more likely that he has spent those funds perhaps on other children. Accordingly, the repayment is likely to cause a hardship for him and his other family members. This hardship mostly goes unaddressed in the law. However, the courts have not been reluctant to grant a credit against child support when there has been an overpayment for such things as child care or summer camps, even though the household economics which underpin the “no restitution” public policy affect each household in the same way in both situations (see Matter of Zengling Shi v Shenglin Lu, 110 AD3d 729 [2013]; Grasso v Grasso, 47 AD3d 762 [2008]; Barbones v Smith, 27 AD3d 404 [2006]; Krassner v Krassner, 20 AD3d 509 [2005]).

. The credit would also apply to a situation where the Family Court remanded the matter to the Magistrate and the Magistrate issued a new order which was less than his original order.