OPINION OF THE COURT
David B. Saxe, J.
Once divorcing spouses have agreed to their respective child support obligations in a separation agreement, and those terms are incorporated in a divorce decree, can a substantial disparity between the parents’ respective economic circumstances form the basis of judicial modification of those support *37 obligations? Ordinarily, the mere existence of such an economic disparity by itself is not enough to justify modification. However, because of the unusual and unforeseeable circumstances presented here, I hold that the effect of the disparity on the child can create a situation where modification is appropriate.
The parties were married on June 27, 1976; their son Jeremy was born on November 17, 1979. A judgment of divorce entered May 14, 1987 incorporated, but did not merge the terms of a separation agreement dated March 5, 1987. By those terms, the plaintiff wife, who has primary physical custody of Jeremy, receives $650 per month as child support until October 1, 1991 and $675 per month thereafter. As maintenance, she received $2,500 per month until December 1, 1989, and thereafter $2,000 per month until October 1, 1991, at which time spousal maintenance ceases. The defendant husband is a partner in a prominent Manhattan law firm. The wife, who was employed as a journalist prior to Jeremy’s birth, now runs a public relations consulting firm, with little or no earnings.
The plaintiff wife, no longer represented by the law firm which negotiated the separation agreement for her, now moves for upward modification of the child support provisions of the parties’ divorce judgment. Jeremy, who is now 11 years old, has been diagnosed as suffering from an Attention Deficit Hyperactivity Disorder (ADHD), and the plaintiff contends that because of Jeremy’s condition as well as his response to his medication, she must be available for him during school hours, and must be present when he comes home from school. Therefore, she says, she is unable to take a full-time job. She further argues that Jeremy’s difficulties are exacerbated by the economic disparity between what she can provide and what her ex-husband is able to provide for Jeremy. The defendant husband responds that the plaintiff is in reality seeking a continuation of maintenance past October 1991, and takes the position that Jeremy’s condition does not require plaintiff to forego full-time employment, and that the other problems would be eased or solved if she found work.
Initially, the plaintiff relied upon a report by Jeremy’s psychiatrist, Dr. Jack Snyder, whose report stated that "It would be beneficial for the mother or father to be present after school. During the after-school hours the medication will be wearing off and the child often experiences rebound symptoms.” Later, the psychiatrist signed an affidavit stating that *38 “it is urgent for Jeremy’s mental health and well-being that Mrs. Klaperman obtain employment.” Following this, a second affidavit notes that when he signed the first affidavit, he was misinformed that Jeremy was involved in after-school activities every weekday afternoon.
Dr. Snyder’s recommendations failed to fully inform the court as to whether Jeremy’s needs included close after-school supervision by a parent, or whether the financial disparity between his parents aggravated his emotional and psychological difficulties. Consequently, a court-ordered psychological evaluation was directed and has now been completed.
According to Dr. Alex Weintrob, the court-appointed psychiatrist, Jeremy’s Attention Deficit Hyperactivity Disorder appears to be fairly well controlled with medical treatment. He has been academically successful and it does not appear that academic supervision of Jeremy in the afternoons by his mother is necessary. Moreover, Dr. Weintrob saw little indication that the parties’ economic disparities has any effect on Jeremy’s attentional difficulties.
However, it is documented that Jeremy has serious behavior and attitude problems beyond the attention difficulties. As Dr. Weintrob notes, it is reasonable to attribute these problems to multiple factors, including (1) the divorce, (2) his parents’ continuing disagreements in which he is placed in the middle, and (3) the disparity between his parents’ economic circumstances, as well as his natural temperament and his ADHD.
The standard against which the movant’s showing must be judged should be defined at the outset. The basic rule regarding modification of agreed-upon child support is enunciated in Matter of Boden v Boden (42 NY2d 210, 212-213 [1977]): “Where * * * the parties have included child support provisions in their separation agreement * * * the stipulated allocation of financial responsibility should not be freely disregarded. It is to be assumed that the parties anticipated the future needs of the child and adequately provided for them. It is also to be presumed that in the negotiation of the terms of [an] agreement the parties arrived at what they felt was a fair and equitable division of the financial burden to be assumed in the rearing of the child. * * * Absent a showing of an unanticipated and unreasonable change in circumstances, the support provisions of [an] agreement should not be disturbed * * *. Unless there has been an unforeseen change [of] circumstances and a concomitant showing of need, an award [of] *39 child support in excess of that provided for in the separation agreement should not be made based solely on an increase in cost where the agreement was fair and equitable when entered into”.
After Boden (supra), however, the Court of Appeals recognized that "the principles enunciated in' Boden are not applicable in every case in which increased child support is sought in the face of a separation agreement” (Matter of Brescia v Fitts, 56 NY2d 132, 138-139 [1982]). It concluded that those principles apply "only when the dispute is directed solely to readjusting the respective obligations of the parents to support their child” (supra, at 139). The court went on to distinguish such an application for "readjustment” from one "where it is the child’s right to receive adequate support that is being asserted” (supra, at 139). In Brescia, the petitioner/mother "introduced evidence tending to show * * * that the combination of her own income and the payments contributed by respondent does not adequately meet the children’s needs” (supra, at 140), and the court concluded that denying the increase in reliance on Boden was improper.
Where the child’s right to receive adequate support is at issue, therefore, the court may modify agreed-upon child support in the best interests of the child, considering both the circumstances as they existed at the time of the prior award and at the time the application is made (Matter of Brescia v Fitts, supra, at 141). Factors which may enter into consideration are the increased needs of the child, a loss of income by a parent or substantial improvement in the financial condition of a parent, and the current and prior life-style of the child (supra).
Consequently, the phrasing of the application for an increase takes on a primary importance: is the movant merely seeking a "readjustment” of the parents’ respective support obligations, or can she demonstrate that the agreement results in inadequate support for the child?
The defendant husband contends that in their separation agreement, the parties contemplated that the plaintiff would obtain full-time employment and contribute to Jeremy’s support. Her refusal now to take a full-time job, he contends, is the sole basis for her application, and amounts to a request that the parties’ agreed-upon allocation of child support be readjusted by the court to impose upon him the burden she had agreed to shoulder.
*40 I agree that the plaintiff has not demonstrated any convincing need to remain at home during normal working hours for Jeremy’s sake. Nor has the plaintiff demonstrated that she tried and was unable to find remunerative full-time employment. But I am not convinced that such employment will eradicate Jeremy’s current difficulties.
I do not mean to suggest that where a great disparity exists between the financial means of divorced spouses, child support should be used to redistribute their wealth so that both parents can provide equally for the child. However, the needs of a child are complex, and vary from child to child according to their circumstances: for instance, children with physical disabilities, emotional problems, or medical problems may need more financial support than their healthier counterparts. When a newly arisen problem is one that simply requires medical treatment, the amount of additional support needed by the child is easy to calculate (see, e.g., McNeela v McNeela, 135 AD2d 515 [2d Dept 1987]). But the situation presented here is less straightforward. The defendant pays all Jeremy’s school expenses and all medically related expenses, as well as $650 child support per month, and it is difficult to conclude that such provision for his support is inadequate. However, Jeremy has serious, documented behavior problems, which appear to stem in part from his neurological disorder, as well as from emotional responses not uncommon generally in children whose parents are divorcing. The point is made, and supported by psychiatric experts, that Jeremy’s emotional and psychological problems are aggravated by the disparity between his parents’ financial circumstances.
This disparity is severe. Jeremy’s father is a member of the law firm of Shearman & Sterling and his yearly earnings are in the hundreds of thousands. Because of his father’s wealth, Jeremy attends the Birch Wathen school, an exclusive private day school, has his own personal computer, wears expensive clothing, goes on luxury vacations, and eats at expensive restaurants. On the other hand, Jeremy’s mother, his primary custodial parent, even upon obtaining full-time work will in all likelihood only be able to provide him with the basics of food, clothing and shelter, with none of the other day-to-day luxuries he has come to accept and expect as part of his other life. Jeremy’s response to the disparity is troublesome. For instance, Jeremy once stole quarters from his father to help his mother with the laundry.
Where a child exhibits severe behavior problems which *41 appear to be aggravated by his fears about his mother’s (and therefore his own) relative financial insecurity, the situation is best viewed as an unforeseen change of circumstances, and modification of child support may be able to address and alleviate the problems.
I direct that the parties appear on April 25, 1991 at 10:00 a.m. for the purpose of holding a hearing as to the amount of support Jeremy requires in view of his psychological and emotional needs. Also at issue is the appropriate allocation between the parties of such support, assuming the plaintiif obtains full-time employment.