OPINION OF THE COURT
Ellen Gesmer, J.
Motion sequences 8 and 9 are consolidated for decision.
In this action, plaintiff M.R. (mother) sought an order of custody of the parties’ son, J., and an order of child support from defendant A.D. (father). After a lengthy trial, the court issued a decision granting parallel custody to the parties, and establishing a schedule under which J. resides primarily with his father during the school year, and primarily with his mother during summers and school vacations (M.R. v A.D., 32 Misc 3d 512 [Sup Ct, NY County 2011]). The mother now moves, in motion sequence 8, for an order directing that the father pay her attorneys’ fees both for her pending appeal of this court’s custody determination after trial, and for the remaining proceedings in the trial court on her application for child support. The father opposes the motion, and, on motion sequence 9, seeks an order granting summary judgment in his favor on the mother’s cause of action for child support, on the theory that, as the primary custodial parent, he cannot be required to pay child support.[1] The central issue now before the court is whether the court may award child support to the mother under the atypical custodial arrangement fashioned by the court. The *573 court holds that, under the extremely unusual circumstances of this case, awarding child support to the mother is not precluded as a matter of law, arid therefore denies summary judgment to the father.
Facts
The background facts of this matter are set forth in this court’s post-trial custody decision dated May 27, 2011 (the decision), and will not be repeated here, except as relevant to the instant motions.
The parties were never married and have a son together, J., born on November 25, 2003 (now eight years old). The mother commenced this custody and child support action on April 16, 2009.
The decision awarded the parties parallel legal custody of J., with the father having final decision-making authority, after consultation with the mother, as to education and medical decisions, and the mother having final decision-making authority, after consultation with the father, as to summer activities, extracurricular activities, and religion. Both parties are permitted to communicate with and obtain records from J.’s educational and medical providers and to attend all of his school events. Based on the father’s greater ability to provide stability for J., and the mother’s close and loving relationship with J., the decision set a schedule of parenting time under which J. resides primarily with his father during the school year, and primarily with his mother during the summer and other school break periods. This schedule results in J. spending 206 days of the year, or roughly 56%, with his father, and 159 days, or roughly 44% with his mother. However, J. spends a far greater percentage of the days when he is not in school with his mother. An order consistent with the decision was signed on July 27, 2011.
When the father filed this summary judgment motion on August 9, 2011, the parties had commenced, but had not yet completed, financial discovery. Except for the limited discovery directed by this court in its October 11, 2011 order, further discovery was stayed by the filing of the summary judgment motion.
The mother has filed four net worth statements (NWSs) between April 2009 and July 2011. Those reveal the following:
*574 Date of NWS Monthly Expenses Monthly Income Assets Debt 4/1/09 $38,247.87 $0 $18,000[2] $95,933.04[3] 12/17/10 $9,635 $6,000 $1,175 $109,009 6/15/11 $9,600 $6,000 $7,500 $248,000 7/6/11 $8,242 $5,600 $7,957 $109,009
The mother, now 48, has not worked since in or about 2001, although she is licensed as a real estate agent. All of the income that she lists on her updated net worth statement dated July 6, 2011 (her July 2011 NWS) is child support. Of that amount, $5,000 per month is paid by the father pursuant to this court’s June 29, 2009 pendente lite decision and order as interim support of J., and $600 per month is paid by the mother’s ex-husband as child support for their daughter A. The mother’s July 2011 NWS lists an alleged personal loan from a friend, in the amount of $100,000, and a debt of about $9,000 to Citibank, both of which appear on her two prior NWSs. The July 2011 NWS lists no debt to her attorneys although her prior NWS shows a debt of $128,500 to her attorneys. Her monthly expenses include $4,350 for rent.
The father’s attorney correctly points out that there are a number of discrepancies between the financial documents obtained in discovery and the mother’s deposition testimony, on the one hand, and the mother’s claims in her various NWSs, on the other.[4] For example, the loan of $100,000 that she lists on her NWSs is supported by promissory notes totaling only $28,500, and she also testified at her deposition that she received gifts from the same friend. The mother also testified at *575 her deposition that another friend also gave her substantial financial assistance, none of which appears on any of the mother’s NWSs. She also gave conflicting statements in her NWSs about valuable jewelry given to her by the father, but essentially concluded at her deposition that she does not know where these items are at the present time and is not sure what happened to them.
Whatever the discrepancies in the mother’s claims about her financial situation, however, it is undisputed that the father is, by far, the “monied” parent in this matter. He is 65 years old, and is the owner of a successful company. As this court previously found in the decision, between approximately 1997 and 2008, he provided enough financial assistance to support the mother, her mother (who lived with her at that time), A., and J. (who also then resided with the mother), including giving the mother $22,000 per month, expensive gifts, and paying for vacations and for 24-hour, 7-day-a-week nannies. The father currently resides in a luxury Tribeca loft with his girlfriend, their two-year-old daughter, and J. His net worth statement dated March 31, 2009 lists his assets as being worth approximately $20,000,000, with total liabilities of just $211,000. His gross annual income as reported on his 2007 tax return was $4,891,549. His gross annual income as reported on his tax returns in more recent years was $1,981,110 in 2009, and $1,289,799 in 2010.
The father paid the mother’s first attorney $15,000. On May 27, 2011, this court directed the father to pay the mother’s attorneys additional interim counsel fees totaling $170,000, based in large part on the mother’s claims in her second NWS.
In her order to show cause, the mother seeks $93,538.65 in counsel fees “to pursue her appeal of this matter, fees for the appellate printer, fees for the making of this motion and fees for the remainder of this action, including pretrial discovery and hearing on the issue of child support.”[5] Her attorney also states in his moving affirmation that she owed his firm $75,000 at the time the mother’s motion was filed. No copies of her attorneys’ bills were attached to her moving papers.
*576 However, attached to the mother’s attorney’s reply affirmation are redacted copies of bills dated between July 31, 2011 and October 31, 2011, showing that she owed them $134,080.81 as of October 31, 2011.[6] Because of the redactions, it is impossible to determine whether the fees were incurred for the appeal, discovery and trial preparation in the child support matter, the instant motion, or any other category of work. The unredacted portions of the bills list approximately $5,000 in fees incurred in connection with work conducted on her fees motion, none of which is unreasonable on its face. The unredacted portions also list approximately $7,500 in fees related to the discovery directed in this court’s October 11, 2011 order in connection with the mother’s fees motion, also not facially unreasonable in terms of time spent or hourly fees charged. In his reply affirmation, the mother’s attorney requests a total of $76,531.65 in counsel fees, consisting of $45,275 to perfect the appeal, $10,606.65 for the appellate printer’s and filing fees, $15,650 in connection with the instant fees motion (including the discovery and deposition directed in this court’s October 11, 2011 order), and $5,000 for opposing the father’s summary judgment motion, although the mother did not request this relief by cross motion.
Analysis
Summary Judgment
“The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law” (Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007], citing Winegrad u New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once the moving party has proffered evidence establishing a prima facie case, “the party opposing a motion for summary judgment bears the burden of ‘producing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact’ ” (People v Grasso, 50 AD3d 535, 545 [1st Dept 2008], quoting Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). If there is any doubt as to the existence of a triable issue of fact, summary judgment must be denied (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]; Grossman v Amalgamated Hous. Corp., 298 AD2d 224, 226 [1st Dept 2002]).
The Child Support Standards Act (CSSA) requires the court to direct the “non-custodial” parent to pay child support in an *577 amount determined after application of a statutory formula and consideration of various factors (Family Ct Act § 413).[7] The father argues that the court should grant summary judgment in his favor because he is the “custodial” parent, since J. spends more than 50% of the days of the year with him, and therefore, the court cannot order him to pay child support.
The court rejects the father’s argument, as being excessively mechanical and contrary to the purposes of the CSSA. The CSSA does not define the term “non-custodial.” As a result, the courts have struggled with how to apply the statute where the parties have adopted an access schedule that does not provide for a clear home base. When applying the CSSA to such arrangements, the courts have been mindful that the CSSA
“had among its objectives the assurance that both parents would contribute to the support of the children, and that the children would not ‘unfairly bear the economic burden of parental separation’ (Governor’s Program Bill Mem, Bill Jacket, L 1989, ch 567, at 1). Emphasis was to shift ‘from a balancing of the expressed needs of the child and the income available to the parents after expenses to the total income available to the parents and the standard of living that should be shared with the child’ (Reichler and Lefcourt, NY St BJ, op. cit., at 44; see also, Governor’s Approval Mem, 1989 NY Legis Ann, at 250 [‘children will share in the economic status of both their parents’]).” (Matter of Cassano v Cassano, 85 NY2d 649, 652 [1995].)
To accomplish these diverse objectives, the CSSA created a system with greater uniformity that nonetheless maintained “the degree of judicial discretion necessary to address unique circumstances” (id.). Thus, when the Court of Appeals first addressed the application of the CSSA to a shared custody arrangement, it did not create a categorical definition of the “noncustodial parent,” but rather held that “fi]n most instances, the court can determine the custodial parent for purposes of *578 child support by identifying which parent has physical custody of the child for a majority of time” (Bast v Rossoff, 91 NY2d 723, 728 [1998] [emphasis added]).[8]
The father distorts the holding of Bast by claiming that, in that case, the Court of Appeals “settled” the issue that the party with less than half the parenting time is the non-custodial parent for child support purposes. If that had been its intention, the Court of Appeals would have said so; instead it left that issue to the courts’ discretion by indicating that would be the case only “[i]n most instances.” Moreover, if the father’s description of Bast were accurate, then the courts would have been at a total loss as to how to apply the CSSA in cases where the parents adopted a truly equal parenting schedule. However, in those cases, the courts have held that the parent with the greater income should be deemed the “non-custodial” parent for the purposes of the CSSA, under the reasoning that such a rule would “assure that children will realize the maximum benefit of their parents’ resources and continue, as near as possible, their preseparation standard of living in each household” (Baraby v Baraby, 250 AD2d 201, 204 [3d Dept 1998]; see also Kaye v Kaye, 6 Misc 3d 1005[A], 2005 NY Slip Op 50008[U] [Sup Ct, NY County 2005]; Barr u Cannata, 57 AD3d 813 [2d Dept 2008]; Matter of Carlino v Carlino, 277 AD2d 897 [4th Dept 2000]).
Some courts have applied the Baraby doctrine where the parties had “roughly equivalent time with the children and no party can be said to operate ‘command central’ for them” (see e.g. Kaye at *9 [deeming father, who earned adjusted gross income of approximately $64,000 per year, the non-custodial parent for purposes of child support, where mother earned approximately $35,000 per year and the parties shared “roughly” equal custody, without further specifying the custodial arrangement]). Those courts have found that doing so is consistent with the legislative purposes enunciated in Bast (supra). Indeed, in Martin v Buckley (33 Misc 3d 1234[A], 2011 NY Slip Op 52235[U] [Sup Ct, Monroe County 2011]), the trial court deemed the father, whose CSSA income was $35,132, the non-custodial parent for purposes of child support, where the mother’s CSSA *579 income was $9,435, and the children spent “slightly” more time with the father than with the mother, without further specifying the custodial arrangement.
This case is exceedingly unusual in several respects. First, the court has determined that it is in J.’s best interests to live primarily with the mother during summers and other school break periods. Therefore, although J. may sleep at his father’s home for more than half of the nights, it is by no means clear that J. spends more than half of his waking, non-school time with his father. In addition, the mother also has the final decision-making authority as to several important aspects of J.’s life, including decisions that must be made during times when he is in the primary physical custody of his father during the school year. Therefore, as in Kaye, it is impossible to say in this case that either parent is the “command central” for J. Second, regardless of the mother’s lack of full candor about her finances, it is clear that the economic chasm between the parties is vast, and it seems that the mother’s future economic prospects are dim. Her chances of finding employment after more than a decade out of the workforce are low. It also appears, perhaps for some of the same reasons set forth in the decision underlying the custody determination, that the mother is almost completely economically dependent upon the meager child support she receives from her daughter’s father, the occasional cash gift from her elderly mother’s Social Security income, and the kindness of her gentlemen friends. Therefore, without child support from the father, it is unlikely that she can continue to pay $4,350 per month in rent or maintain anything close to the kind of home for J. that the father can afford to provide, or that she once afforded with the father’s assistance. Since J. will spend very nearly half of his time in his mother’s care, it seems likely that, in the absence of an award to the mother of some form of child support, the end result will be the one the Court of Appeals sought to avoid in Bast, and that the Legislature sought to overcome in promulgating the CSSA: J. will be deprived of “needed resources” when he is in his mother’s care (Bast at 731), and he will bear the economic burden of parental separation by being deprived of the standard of living appropriate to the total income of his parents, thus thwarting the purpose of the CSSA (Cassano at 652). A mechanical application of the CSSA to this case could result in the serious danger recognized by Justice Saxe in Klaperman v Klaperman (151 Misc 2d 36, 40 [Sup Ct, NY County 1991]) that J. would be adversely affected *580 by “the disparity between his parents’ financial circumstances.” Indeed, given the mother’s precarious financial condition, in the absence of an award of child support, it seems quite possible that the mother would be unable to exercise her parenting time, even though the court found in the decision that it is in J.’s best interest that he spend a substantial amount of time with her.
Because of the unusual parallel legal custody and very nearly equal shared physical custody arrangement enjoyed by these parents, this decision does not create a “discretionary approach for a whole class of cases” (Bast at 728), but rather represents an appropriate exercise of the court’s discretion, vested in it by the Legislature (Cassano, supra), to a unique set of circumstances. Therefore, the result is consistent with the statute. Accordingly, the court denies the father’s summary judgment motion.
Attorneys’ Fees
Section 237 (former [b]) of the Domestic Relations Law permits the court to direct a parent in a custody or child support proceeding “to pay such sum or sums of money for the prosecution or the defense of the application or proceeding . . . as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.” Applications for appellate counsel fees are properly made to the court that issued the order appealed from (see Holloway v Holloway, 307 AD2d 405 [3d Dept 2003]). Among the factors courts consider on a counsel fees determination are the parties’ financial circumstances, the complexity of the issues involved, the relative merits of the parties’ positions, the nature and extent of the services rendered, and the reasonableness of the fees under the circumstances (O’Shea v O’Shea, 93 NY2d 187 [1999]; DeCabrera v Cabrera-Rosete, 70 NY2d 879 [1987]; Merrick v Merrick, 190 AD2d 515 [1st Dept 1993]; Delgado v Delgado, 160 AD2d 385 [1st Dept 1990]). When considering a request for prospective fees for an appeal, the trial court is particularly well situated to determine the reasonableness of the request and the fair value of the services to be rendered without a fees hearing (Delgado at 386).
The court will not entertain the mother’s request for fees in connection with the father’s summary judgment motion, since she failed to make that request in a notice of cross motion and it is not properly before the court.
The mother is entitled to reasonable fees in connection with bringing this motion, including those incurred in connection *581 with her compliance with the October 11, 2011 order directing discovery in connection with the fees motion. Since she was not entirely forthcoming about her finances, and this led to some of the necessity for the discovery ordered, and to her producing the July 2011 NWS less than one month after her previous NWS, the court awards her less than the full amount of fees attributable to discovery and preparation of the motion. The court awards her $9,000 in connection with her fees application and the discovery directed by the court.
The mother is also entitled to an award of fees in connection with the appeal she intends to bring, as is her right. The father argues that the court should not grant the mother fees for her appeal because she has not demonstrated a reasonable probability of success on appeal, citing Habiby v Habiby (24 AD2d 435 [1st Dept 1965]). However, as the father’s counsel herself candidly points out, the Court of Appeals has recognized that this is no longer a strict requirement for an award of counsel fees, since the Legislature did away with it when it replaced the former section 1169 of the Civil Practice Act with section 237 of the Domestic Relations Law (O’Shea at 191). Although counsel also correctly points out that the relative merits of the parties’ positions is among the factors courts consider in awarding counsel fees, the court is aware of the mother’s positions as to custody, having presided over the custody trial, and cannot say that they are entirely without merit, especially in view of the relatively novel aspects of the decision. Accordingly, the court awards the mother an additional $56,000 as fees in connection with her appeal.
Finally, the mother is entitled to some fees in connection with the child support trial. However, the mother’s failure to be fully forthcoming about her finances has resulted in delays. As a result, the court does not find her attorneys’ request for $33,000 in connection with the child support matter to be reasonable. The court awards her $15,000 as counsel fees in connection with the child support hearing.
All of these fees awards are subject to reallocation after the financial trial in this matter, and are made without prejudice to requests for additional fees at the time of trial or sooner, as necessary.
Accordingly, the father is directed to pay directly to the mother’s attorneys $80,000 on or before March 15, 2012. If the counsel fees are not paid by March 15, 2012, the Clerk is directed to enter a judgment in favor of counsel upon filing of an affirmation, with no further notice to the father required.
*582 In accordance with the above decision, it is ordered that the father shall pay directly to the mother’s attorneys $80,000 on or before March 15, 2012, subject to reallocation after the financial trial of this matter, and without prejudice to additional fees requests as necessary; and it is further ordered that, if the father fails to pay the mother’s attorneys the fees as directed above, the Clerk is directed to enter a judgment in favor of counsel upon filing of an affirmation, with no further notice to the father required; and it is further ordered that all relief requested but not granted above is denied.

. The father also sought a stay of the mother’s counsel fees request pending determination of the summary judgment motion. I issued an order dated October 11, 2011, in which I (1) directed the mother to produce certain discovery documents and appear for her deposition on October 25, 2011; and (2) set a schedule for the briefing and submission of the mother’s counsel fees motion. Therefore, the father’s request for a stay is now moot.
While the father contends that his child support obligation should have ended in June 2011 when the new custodial arrangement went into effect, he does not seek recoupment of any temporary child support paid to the mother after that date.

. While this represents the total of her cash assets, she lists her total asset value as “unknown.” She also lists a joint account with her mother, containing $27,000, as to which she stated that “95%” belonged to her mother, and that they planned to use it to pay her mother’s funeral expenses.

. This includes $74,183.04 in back rent, which, as discussed in the decision, the father settled by paying $50,000 to her former landlord.

. For example, as of December 17, 2010, when the mother filed her second NWS, claiming the total value of her assets as $1,175, she had two bank accounts containing a total of approximately $20,000. At her deposition, she admitted that the sums in these accounts were lump sum payments of child support arrears that she received from her daughter’s father in or about November 2010, as a result of her lawsuit against him for arrears allegedly totaling in excess of $100,000. In addition, although the mother’s July 2011 NWS lists her child support income from the father of her daughter as $600 per month, she admitted at her deposition and in her affidavit in support of her motion that, since November 2010, she has actually received $1,000 per month from him, of which $400 is to be applied to arrears.

. Her attorney’s moving affirmation lists the following specific sums: $45,275 for preparation and perfection of the appeal, $10,606.65 for the appellate printer’s and filing fees, $4,657 for preparation of the mother’s counsel fees motion, $17,000 for discovery and trial preparation for the child support trial, and $16,000 for the child support trial itself. Her attorney’s affirmation provides a breakdown of the attorney time he expects will be spent perfecting the mother’s appeal, and notes that the estimated sum for printing and filing fees is based on his conversations with printing services.

. Because no bills were attached to the mother’s moving papers, the father’s attorney was permitted to submit a surreply affirmation.

. The Supreme Court has jurisdiction to determine child custody and child support matters between unmarried parents pursuant to articles 6 and 4, respectively, of the Family Court Act as a court of “general original jurisdiction” (NY Const, art VI, § 7 [a]; see also Harari v Davis, 59 AD3d 182 [1st Dept 2009]; Allen v Farrow, 197 AD2d 327 [1st Dept 1994]; Bliss v Ach, 86 AD2d 575 [1st Dept 1982], affd 56 NY2d 995 [1982]; M v F, 27 Misc 3d 1205[A], 2010 NY Slip Op 50563[U] [Sup Ct, NY County 2010]; Brentrup v Culkin, 167 Misc 2d 211 [Sup Ct, NY County 1996]; Artache v Goldin, 133 AD2d 596 [2d Dept 1987]).

. The Third Department cases cited by the father for the proposition that the parent who has physical custody for more of the time cannot be compelled to pay child support (Matter of Holmes v Holmes, 184 AD2d 185 [1992]; Matter of Simmons v Hyland, 235 AD2d 67 [1997]) predate the holding by the Court of Appeals in Bast that the non-custodial parent is not in all instances the parent who has physical custody the majority of the time.