(May 11, 2010)

In the Matter of COMMISSIONER OF SOCIAL SERVICES, on Behalf of MAUDLYN V.R., Respondent, v PAUL C., Appellant. [902 NYS2d 29]—

Order, Family Court, New York County (Jody Adams, J.), entered on or about March 30, 2007, which, in a child support proceeding brought by the Commissioner of Social Services as assignee of the child's mother, denied in part respondent father's objections to a December 2006 support order directing him to pay child support, and order, same court and Judge, entered on or about August 19, 2008, which denied all of the father's objections to (a) a November 2007 order denying his motion for summary judgment to dismiss this proceeding on the ground of judicial estoppel, and (b) a January 2008 child support order directing him to pay child support without a deviation from the Child Support Standards Act (CSSA) guidelines, affirmed, without costs.

The father's various arguments based on the mother's alleged fraudulent receipt of public assistance benefits lack merit. The doctrine of judicial estoppel does not apply to bar the proceeding because, although the Commissioner, after commencing this proceeding, did inconsistently refer the mother's case to the District Attorney for a possible welfare fraud prosecution, the District Attorney's decision not to prosecute was not a prior judgment, or indeed any kind of decision, in the Commissioner's favor vindicating a prior position that the mother had committed welfare fraud (*see Olszewski v Park Terrace Gardens, Inc.*, 18 AD3d 349, 350-351 [2005]).

Nor should the case have been removed from Family Court to Supreme Court so as to allow the father to raise the issue of the mother's alleged fraud. The proceeding was properly brought in Family Court pursuant to Family Court Act § 571 (*see generally Matter of Commissioner of Social Servs. v Segarra*, 78 NY2d 220, 224 [1991]), and, as Family Court pointed out, the father's remedies for the mother's alleged ineligibility for public assistance are administrative, not judicial.

The father's objection to the Support Magistrate's quashing of his so-ordered subpoena for the Commissioner's public assistance records was properly denied because the father failed to demonstrate his entitlement to the confidential records sought therein under a specific regulatory exception (*see D & Z Holding Corp. v City of N.Y. Dept. of Fin.*, 179 AD2d 796, 798 [1992], *lv denied* 79 NY2d 758 [1992]). The failure to give the father the required eight days' notice of the motion to quash was harmless, and, as Family Court also noted, the record indicates that the father neither objected to the Commissioner's affirmation in support of the motion nor requested an adjournment to respond to the motion.

Finally, the Commissioner's alleged failure to contact the Department's Inspector General's Office about the mother's alleged fraud cannot be deemed frivolous within the meaning of 22 NYCRR 130-1.1 (c) since the Commissioner referred the alleged fraud to the District Attorney's Office and the District Attorney decided not to pursue the matter.

The mother's sworn testimony confirming the statements of the Commissioner's attorney was sufficient to meet the Commissioner's burden of proving that the mother is a recipient of public assistance (*cf. Matter of Eason v Eason*, 86 AD2d 666 [1982] [recipient of public assistance did not testify as to her needs or those of her children]).

The Support Magistrate properly concluded that the father was not entitled to an automatic deviation from the CSSA

guidelines simply because of the parties' equal sharing of custody. Indeed, "[s]hared custody arrangements do not alter the scope and methodology of the CSSA" (*Bast v Rossoff*, 91 NY2d 723, 732 [1998]). The father failed to preserve his argument that the Support Magistrate, in balancing his resources, improperly used a self-support reserve for an individual, rather than a support reserve for a family of two, and we decline to review it. Concur—Tom, J.P., Andrias and McGuire, JJ.

Manzanet-Daniels, J., dissents in a memorandum as follows: Because I believe that respondent-appellant father was deprived of his due process right to present evidence concerning the mother's financial means, and because I believe, at a minimum, that the amount of child support should be adjusted to reflect the fact that the parties have a split custody arrangement, I dissent.

In this proceeding, the Commissioner of Social Services, as assignee of the nonparty mother, seeks child support from appellant father for the couple's two children, claiming that the mother's active welfare case constitutes a "change in circumstances" mandating revision of the parties' previously negotiated agreement, pursuant to which the mother and father waived the right to child support from each other. It was not claimed that there had been a change in the financial circumstances of the mother, other than the fact of the opening of a welfare case. Because the father was denied the opportunity to obtain any discovery concerning the mother's welfare case, it could not be verified that there had, in fact, been a change in circumstances in the mother's finances so as to warrant a modification of the parties' support decree.

Appellant father asserted that the mother had committed and continues to commit welfare fraud. The Commissioner, acting on information provided by appellant, referred the matter to its fraud investigation unit and ultimately to the District Attorney's Office, which declined to prosecute.

Appellant's principal claim on appeal is that he was deprived of due process by the Family Court, which denied him the opportunity to contest the issue of whether the mother was lawfully on welfare. The Family Court, inter alia, precluded appellant father's attorney from cross-examining the mother regarding her entitlement to welfare, granted the Commissioner's oral application to quash a subpoena seeking production of records relating to the mother's welfare application for in camera inspection, and found that the Commissioner had established a prima facie case merely by submission of documents showing that the mother had an active welfare case.

Although the Family Court found that the father's only recourse was to challenge the mother's entitlement to welfare in a CPLR article 78 proceeding, on appeal petitioner frankly admits that appellant father had no standing to bring such a proceeding. I would hold that under the circumstances of this case, appellant father was entitled, at a minimum, to cross-examine the mother and to present evidence in support of his affirmative defenses. The failure to do so was a violation of procedural due process, particularly since appellant father has no standing to challenge the mother's eligibility for welfare in an article 78 proceeding. The Department of Social Services (DSS), as assignee of the mother, stands in her shoes and has failed to show a change in circumstance warranting modification of the parties' child support obligations. I would accordingly modify to the extent of remanding the matter to Supreme Court for a framed issue hearing.

The mother and father were divorced in Supreme Court, Kings County, in March 2003. Pursuant to a stipulation, incorporated in their judgment for divorce, the parties agreed to a 50/50 sharing of physical custody of their two daughters. The parties represented that they had been advised of the provisions of the Child Support Standards Act (CSSA), and each agreed that they would deviate from that standard and waive any right pursuant to the guidelines. The stipulation, entered on the record, provided that "[t]he deviation is based on the fact that the parties are sharing expenses and sharing the custodial time with the children," and that as a result, "neither party shall be paying child support to the other party."

The parties agreed to retain his or her own separate property, and to waive any rights as to the other's property. The parties exchanged net worth statements and relied on the representations therein with respect to finances. Each party acknowledged that he or she had been made aware of the factors affecting income and property, including the present and future earning capacity of each party, and the ability of each party to be self-supporting. Each party released and discharged the other from any and all claims, including present and future claims for alimony and maintenance, and each specifically acknowledged that he or she was self-supporting. The net worth affidavit submitted by the mother in connection with the proceeding indicated that she was a sculptor, self-employed, with a gross income of $15,000, assets in the amount of $2,000 and liabilities in the amount of approximately $31,000.

In October 2002, the mother requested permission to relocate to Lower Manhattan, where she had been accepted into an art-

ists' community.[1] The mother subsequently (and apparently in defiance of the parties' stipulation) moved to Manhattan and commenced a custody proceeding in the Family Court, New York County. On or about August 2, 2004, the mother applied for welfare.

By petition dated August 2, 2004, petitioner Commissioner, as assignee of the mother, sought an order directing appellant father to pay support for the subject children. On or about October 12, 2004, appellant father filed a verified answer alleging, inter alia, that the mother had committed a fraud upon the Commissioner and had obtained public assistance benefits for herself and the children by concealing assets and income which would otherwise have disqualified her from receipt of public assistance. Appellant father attached the affidavit of net worth submitted by the mother in connection with the divorce proceeding, which showed, inter alia, that the mother had $2,000 in a bank account in England; that she had various items of art sculpture in storage, for which she owed unpaid storage charges of $11,000; that she paid $395 per month for rental of an art studio; that she received $300 per month from a friend, and that the friend had paid the mother's legal fees in connection with the custody proceedings.

By letter dated January 4, 2005, appellant's attorney advised the Commissioner of his belief, based on the various statements in the mother's affidavit of net worth, that the mother had engaged in and continued to engage in welfare fraud. The Commissioner referred the matter to its bureau of fraud investigation, and in turn to the New York County District Attorney's Office. The District Attorney ultimately declined to prosecute for fear that the case could not be proven beyond a reasonable doubt.

A hearing was held before the Support Magistrate over the course of several dates. At the beginning of the hearing, appellant father's attorney stated that it was his intention to cross-examine the mother regarding the defenses interposed in his answer. He stated that it was his understanding that the mother was to be produced by the Commissioner, and, accordingly, that he had not subpoenaed the mother himself. Appellant's counsel complained that the mother's absence was "irreparably harmful to the presentation of [his] case," and asked that the case be dismissed.

Counsel for DSS argued that whether the children were law-

---

1. The court was "disturbed" by the fact that the mother had evidently been on a waiting list for subsidized housing for 10 years, but had neglected to mention this fact to the court during the proceedings.

fully on public assistance was "not an issue that c[ould] be dealt with by [the Family] Court."

The Support Magistrate found that under the circumstances of the case, DSS was not required to produce the mother. The Support Magistrate stated: "If you don't subpoena her and she—if you subpoena her and she's not here, well then the Court will certainly take negative inferences due to the fact that the witness was subpoenaed and is not here. But if you don't subpoena her and they choose not to produce her on their prima facie case, they have enough evidence—they have enough between the case law and an active public assistance case to stop right there." The Support Magistrate proceeded, over appellant father's objections, to enter a temporary order of support. Before adjourning on that date, the Support Magistrate advised the parties: "[W]hen we sit down on the next Hearing date, the witnesses need to be produced to establish your prima facie case in whatever way that is done—okay. Mr. Elisofon, you're gonna take over from there. You're absolutely right. You can't cross-examine a printout, but the Commissioner will present its case the way it chooses to. So if you want witnesses, then you get them here. If you don't have witnesses and you want to make an argument as to the case that as presented and whether or not it establishes such a prima face case, whether or not it's sufficient under the law, whether or not it should be dismissed after they've made their case, then of course you will make the appropriate motion at that time."

On or about March 1, 2006, appellant father subpoenaed the public assistance application of the mother for in camera inspection. The Commissioner's oral application to quash the subpoena was granted over appellant's objection. The Support Magistrate ruled that she did not have jurisdiction to determine the mother's eligibility for welfare and what the mother may or may not have divulged to the Commissioner regarding her sources of income.

At the next hearing date, May 15, 2006, appellant's counsel argued that the Commissioner should have removed the proceeding to the Supreme Court, and that by failing to do so his client had been deprived due process of law. Appellant's counsel argued that the issue of welfare fraud was in any event properly before the Support Magistrate since the Commissioner was required to prove, as part of his prima facie case, that the mother was lawfully on welfare. Appellant argued that if the mother, as the recipient of welfare, had no right to child support, then the Commissioner, as her assignee, could have no superior right. Appellant's counsel asked that the matter be dismissed, or, in the alternative, removed to the Supreme Court.

On the Commissioner's case-in-chief, the mother briefly testified regarding her household budget. When appellant's attorney indicated that he wished to cross-examine the witness, the mother requested an attorney. The Support Magistrate adjourned the hearing so the mother could obtain counsel. Prior to adjourning, counsel for the Commissioner asked for an order of proof from appellant's counsel, complaining that he could not think of "any possible basis for witnesses except in trying to put together a claim of fraud," which he claimed was "not the jurisdiction of the [Family C]ourt." Appellant's counsel complained that he had a due process right to inquire as to whether the mother was lawfully on welfare. The Support Magistrate declined to make any rulings prior to hearing the testimony of appellant's witnesses.

At the next hearing date, September 19, 2006, appellant's counsel argued once again that he was entitled to cross-examine the mother regarding her entitlement to public assistance. Appellant's counsel noted that he had given the name and number of the Assistant District Attorney (ADA) handling the matter to opposing counsel, but that opposing counsel had declined to contact the District Attorney's office. Counsel for the Commissioner agreed that he had not contacted the ADA, but maintained that he was under no obligation to do so.

The Support Magistrate rejected appellant's arguments that the Commissioner had not met his burden, finding that "the threshold is met when the [welfare] case is active," and stating that if appellant maintained that there had been welfare fraud, it "was up to the Commissioner . . . to prosecute in a forum that is not Family Court." Appellant's counsel maintained that the Commissioner should have removed the matter to Supreme Court, but admitted that he had not sought to remove the matter himself because his client was of "limited means."

In summation, appellant father argued that notwithstanding the fact that the Family Court was a court of limited jurisdiction, the Commissioner, as assignee of the mother, was nonetheless required to make a prima facie case for support in conformity with due process of law. Appellant father argued that the Commissioner failed to elicit any testimony regarding an unanticipated change in circumstance, noting that any cross-examination of the mother as to her alleged reduction in income/assets had been precluded. Appellant father also contended that the Commissioner should be estopped from prosecuting him given the fact that the Commissioner had contended, while prosecuting him as the mother's assignee, that DSS was the victim of the mother's welfare fraud. In the alternative, appellant requested a 50% deviation from the CSSA guidelines.

The Support Magistrate rejected these arguments and ordered appellant father, as the noncustodial party, to pay $572 biweekly (with the mother paying $12 biweekly), without any deviation from the CSSA. The Support Magistrate found, inter alia, that the mother had demonstrated a sufficient change of circumstance to warrant the relief granted in that there had been an active assignment of support rights to DSS pursuant to section 111 of the Social Services Law for the two subject children. The Support Magistrate found that appellant father's equitable arguments were "misplaced." The Support Magistrate noted that the Family Court was a court of "limited jurisdiction" and could not order the termination of benefits to a recipient of public assistance. The Support Magistrate further noted that the records' of the Commissioner were confidential documents the use or disclosure of which was restricted under Social Services Law § 136. The Support Magistrate stated that appellant's "avenue of recourse is through the administrative process or an article 78 proceeding in Supreme Court," not before the Family Court.

Appellant father's objections to the order were granted in part and denied in part by order of the Family Court dated March 30, 2007. Insofar as relevant herein, the Family Court denied appellant's first through fourth objections. The Family Court observed, first, that the Commissioner was not bound by the parents' agreement not to seek child support from one another, noting that in this case "the operative event was the children becoming a public charge." The court denied the second objection, reasoning that pursuant to sections 131-132, 134, 157 and 158 of the Social Services Law and the regulations promulgated thereunder, 18 NYCRR 351.8 and 351.20, the responsibility and authority for determining eligibility for public assistance rested solely with DSS, and that the DSS fraud unit was the appropriate body with whom to address the allegations of fraud by the assignor. The court noted that appellant had a remedy, specifically, an article 78 proceeding. The third objection, regarding the granting of the oral motion to quash the subpoena of DSS's records, was denied as harmless error, since appellant father had no right to the confidential material he had sought to subpoena. The Family Court granted the fourth objection to the extent of remanding the matter for further proceedings and a detailed analysis of the split custody issue and its effect, if any, on the order of child support pursuant to the principles set forth in *Bast v Rossoff* (91 NY2d 723 [1998]).

By letter dated June 28, 2007, the District Attorney's Office confirmed that the matter had been referred by the Commissioner for criminal prosecution, but that the District Attorney's

Office had declined to prosecute because it did not believe the case could be proven beyond a reasonable doubt. In July 2007, appellant father moved for summary judgment dismissing the support proceedings on the basis of collateral and/or judicial estoppel. Appellant father contended that DSS had taken an inconsistent position in seeking child support pursuant to an assignment from the mother while at the same time representing to the New York County District Attorney's Office that the mother and the children were not lawfully on public assistance.

By order dated November 5, 2007, the Support Magistrate denied the motion. At a further hearing, on November 19, 2007, the mother testified, inter alia, that there had been no change in the 50/50 parenting arrangement approved by the Family Court judge in 2005. By order dated January 14, 2008, the Support Magistrate set support retroactive for the past years and $307 per week in the future, with no deviation from the CSSA. The Support Magistrate also recalculated accrued arrears from which the Support Collection Unit would credit payments made. In calculating income available to respondent father, the Support Magistrate used the self support reserve for an individual, even though the parties had a 50/50 parenting arrangement. Appellant's objections to the order were denied by order of the Family Court dated August 19, 2008. His appeals from both orders were subsequently consolidated.

I agree with the majority that the Commissioner's pursuit of a fraud investigation against the mother, at the same time it was seeking support, as the mother's assignee, from appellant father, does not operate as a judicial estoppel. The doctrine of judicial estoppel prevents a party who assumed a certain position in a prior legal proceeding and who secured a judgment or ruling in his or her favor from assuming a contrary position in another action simply because his or her interests have changed. DSS merely forwarded its file to the District Attorney, who in turn declined to prosecute the mother for welfare fraud. This decision was not made in the context of a legal proceeding and was not a "ruling" in any sense, vindicating a prior position that the mother had committed welfare fraud (*see Olszewski v Park Terrace Gardens, Inc.*, 18 AD3d 349, 350-351 [2005]).

I believe, however, that the cumulative effect of the Family Court's rulings—precluding appellant from cross-examining the mother regarding her means and eligibility for welfare, denying him access to petitioner's records concerning the mother's welfare file, and disallowing him from presenting any evidence whatsoever on the issues raised by his second affirmative defense, was to deny appellant any meaningful opportunity to

present his defense and deprive him of procedural due process. As the Court of Appeals has stated, "The commonsense principle at the heart of the due process guarantees in the United States and New York Constitutions is that when the State seeks to take life, liberty or property from an individual, the State must provide effective procedures that guard against an erroneous deprivation" (*People v David W.*, 95 NY2d 130, 136 [2000]). Whether there has been a due process violation requires analysis of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail (*see Mathews v Eldridge*, 424 US 319, 334-335 [1976]).

Appellant father has a substantial interest at stake. Pursuant to the parties' stipulation, mother and father represented that they were self-supporting and each agreed to waive support, including child support, from the other. Yet now, when it appears that nothing in the financial circumstances of the mother (as reflected in her affidavit of net worth) has changed, the Support Magistrate calculated, and the Family Court approved, support pursuant to the CSSA, with no deviation, at $307 per week, plus arrears, owed to the Commissioner as assignee of the mother.

The next consideration is whether the procedures in place sufficiently prevent the risk of an erroneous deprivation of appellant father's interest. The Commissioner notes that he did consider appellant's claims in referring the matter to its fraud investigation unit and subsequently to the District Attorney's Office. Yet appellant persuasively argues that he was not afforded a meaningful opportunity to contest this determination, since he had no ability to challenge the mother's eligibility for welfare in any proceeding, including an administrative proceeding, where he would have had access to the pertinent records and the ability to cross-examine witnesses.

Under the third prong of the analysis, the government certainly has an interest in ensuring the finality of its determinations regarding eligibility for public assistance; however, it is significant that appellant father, by the Commissioner's own admission, had no standing to challenge that determination in an article 78 proceeding, the usual means for challenging agency determinations. Having been denied this opportunity, it was disingenuous for the Commissioner and the Support Magistrate

to suggest that appellant father had a remedy in an article 78 proceeding, when, in fact, he had none.

Allowing the father to present evidence concerning the mother's eligibility for welfare and whether, indeed, there has been a change in circumstance so as to warrant modification of the child support order, is in harmony with precedent, which dictates that in determining the appropriate amount of child support, there should be "an evaluation of the means and responsibilities of [both parents]"[2] (see Tessler v Siegel, 59 AD2d 846, 847 [1977]; Matter of Commissioner of Social Servs. v McDonald, 245 AD2d 506, 506-507 [1997] ["Although the respondent mother was receiving public assistance, that fact did not conclusively establish her inability to pay child support"]; Rockland County Dept. of Social Servs. v Brust, 102 Misc 2d 411, 414 [Fam Ct, Rockland County 1979] ["a parent should not be free to avoid all financial obligation to his or her child by simply letting that child become a public charge" (citation and internal quotation marks omitted)]).

I also believe that the Family Court improperly concluded that appellant was not entitled to a deviation from the CSSA guidelines where, inter alia, the evidence showed that the parties had a 50/50 parenting arrangement and the Support Magistrate, in performing the relevant income calculations for appellant, improperly used the self-support reserve for an individual.

___

2. Matter of Walker v Buscaglia (71 AD2d 315 [1979]), relied upon by DSS, is not to the contrary. In Walker, it was held that Family Court judges exceeded their jurisdiction by authorizing the Commissioner to terminate public assistance grants to welfare recipients. The Fourth Department reasoned that it was the responsibility of the Commissioner, not the Family Court, when possessed of information that public assistance was no longer needed by a recipient, to give the appropriate notice of intent to terminate payments, give notice of the right to a hearing, grant a fair hearing when requested, and to make the final determination to terminate benefits. In this case, however, respondent merely requests the opportunity to present evidence regarding the mother's means so that child support may be calculated in accordance with the CSSA.