OPINION OF THE COURT
Richter, J.
In this appeal, we are asked to decide whether a parent who has primary physical custody of a child in a shared custody arrangement where the time is not equally divided can be ordered to pay child support to the other parent. We conclude that based on the plain language of the Child Support Standards Act, its legislative history, and its interpretation by the Court of Appeals, a custodial parent who has the child a majority of the time cannot be directed to pay child support to a noncustodial parent.
Plaintiff Mara Rubin (the mother) and defendant Anthony Della Salla (the father) are the unmarried parents of a nine-year-old son. The mother graduated from college with a degree in speech pathology and child development. After college, she worked as a paralegal, and then attended law school for two years. She dropped out of law school and worked in the real estate field for six years. She married in 1995, had a daughter in 1997 and was subsequently divorced. The father attended college on a football scholarship and studied finance and real estate. After college, he entered the insurance field and became a successful businessman, founding and owning a title insurance company. He was married for 22 years and has three grown children. His marriage ended in divorce in 1995.
The parties, who never married, met in the early 1990s and started their relationship as platonic friends. They became romantically involved in 1998, but did not move in together. In November 2003, the mother gave birth to the couple’s son. After the child was born, the mother and father continued to live separately. The mother lived with the child and her daughter in an apartment on Manhattan’s Upper East Side. The father had an apartment in midtown Manhattan and a house in New Jersey.
The parties’ relationship ended in 2007. Although the child lived with his mother, he continued to spend time with his father. In the beginning of 2007, the father met his current girlfriend, and by that fall, they were in a committed relationship. The time the father spent with his son progressively increased after he began his relationship with his girlfriend. In May 2008, the parties agreed that the child would reside with *63 the father every weekend he was not traveling. At that point, the child began to spend, on average, two out of every three weekends with his father. In the summer of 2008, the child went on a two-week vacation with the father and his girlfriend. In November 2008, the father and his girlfriend moved together into an apartment, where the child has his own bedroom.
At about the same time, school officials informed the father that the mother was habitually late in getting the child to school. The father proposed that he take the child to school every day, and the mother agreed. Each morning thereafter, except when traveling on business, the father would pick his son up from the mother’s apartment and timely transport him to school. During the 2008-2009 school year, the child spent most weekends with his father, as well as Thanksgiving, Christmas and nine days of his spring break. The father told the child that he and his girlfriend were expecting a baby, and their daughter was born in April 2009. After the daughter was born, the father significantly decreased his work travel and was available to spend more time with his son.
Despite her college degree and experience in real estate, the mother has not been employed since 2001. Although she claims that the father demanded that she not work, she provides no clear reason for her failure to find employment after the relationship ended in 2007. Nor has the court below made any finding that the mother is physically or mentally incapable of working.
In April 2009, the mother commenced this action seeking sole legal and residential custody of the child, and an order compelling the father to pay child support.[1] The father also sought primary custody of the child. On May 27, 2011, after a 10-day trial, the court rendered its decision on custody, and an order was entered on July 19, 2011. The court awarded primary physical custody to the father during the school year, with the mother having parenting time on alternate weekends (from Friday after school to Monday morning) and every Thursday overnight. During the summer, the schedule was reversed and the child would live primarily with the mother, but would spend Thursday *64 overnights and alternate weekends with the father. The mother would also have the child each midwinter school break, and the other school breaks were evenly divided. In addition, each parent was given two weeks with the child during the summer. With respect to legal custody, the court awarded the father decision-making authority, after consultation with the mother, over educational and medical issues. The mother was given authority, after consultation with the father, over decisions on summer and extracurricular activities, and religion.
The mother appeals from the custody order, arguing that the court erred in changing the parties’ existing custodial arrangement. Custody disputes are resolved based upon a determination of the child’s best interests, made after review of the totality of the circumstances (Eschbach v Eschbach, 56 NY2d 167, 171-172 [1982]). Primary among such considerations are the ability to provide for the child’s emotional and intellectual development, the quality of the home environment and the parental guidance provided (Matter of Louise E.S. v W. Stephen S., 64 NY2d 946, 947 [1985]). In reviewing custody issues, deference is to be accorded to the determination rendered by the factfinder, unless it lacks a sound and substantial basis in the record (Matter of David J.B. v Monique H., 52 AD3d 414, 415 [1st Dept 2008]).
Guided by these principles, we find that the trial court fashioned an appropriately tailored schedule that enables the child to benefit from both the stability and structure given by the father and the maternal nurturing and affection provided by the mother. Although the mother is warm and loving with the child, the evidence at trial showed that her life is in a constant state of turmoil. She lacks appropriate boundaries, has made questionable choices in her interpersonal relationships, is often overwhelmed by routine stress, and has had repeated problems in getting the child to school on time. These factors support the trial court’s view that the father should be the primary custodial parent during the school year, when the child, who has learning disabilities, most needs structure and stability.
The record also provides a sound basis for the trial court’s determination that the father should have decision-making authority over educational and medical issues. With respect to education, the mother has failed to get the child to school on time, did not arrange for a tutor in a timely fashion and has increasingly failed to follow through on important educational issues. As for health matters, the mother neglected to get dental *65 care for the child until he was five years old, and has been remiss in addressing some of her daughter’s health issues. In contrast, the father has exhibited increased involvement in both areas, has followed the recommendations of education professionals and has taken significant steps in addressing the child’s needs. Furthermore, in light of the child’s learning problems and the resulting overlap between educational and medical issues, it makes better sense to have one parent in charge of both areas.
Following the custody decision, the father moved for summary judgment dismissing the mother’s cause of action for child support. The father argued that, by the terms of the custody order, he was the custodial parent because the child would spend the majority of the year with him. Thus, the father argued that, as a matter of law, the court could not order him to pay child support to the mother, the noncustodial parent. The father’s motion included a calendar covering July 2011 to June 2012, which showed that, as per the custody decision, the father had 204 overnights with the child, and the mother had 161. A similar analysis was done for the July 2012 to June 2013 time period, showing 206 overnights with the father and 159 with the mother. These custodial periods equate to the child being with the father 56% of the time and with the mother 44% of the time.
In her response, the mother did not challenge the father’s calculation of the number of overnights each parent had with the child. In fact, she conceded that the child would reside with the father “most of the time,” that the father was the “de-facto custodial parent,” and that she may not be the “custodial parent” for purposes of the Child Support Standards Act (CSSA). She also agreed that under a “strict application” of the CSSA, the father could not be ordered to pay child support. Nevertheless, the mother argued that she is entitled to an award of child support because any other result would be unjust and inappropriate.
In an order entered March 8, 2012, the court denied the father’s summary judgment motion, finding that an award of child support to the mother was not precluded. The court reasoned that because the parties had “parallel legal custody” of their son and both spent some time with the child, it was impossible to say, as a matter of law, that the father is the custodial parent for child support purposes. The court also focused on the disparity between the parents’ financial circum *66 stances and concluded that, regardless of whether the father was the custodial parent, it had the discretion to award the mother child support because she needed funds to pay her monthly rent and to maintain the type of home she could not otherwise afford without the father’s assistance.
The father appeals from the denial of his motion for summary judgment. We reverse, and hold that under the current child support structure enacted by the legislature, the father, as the custodial parent, cannot be directed to pay child support to the mother, the noncustodial parent. The CSSA (L 1989, ch 567) was enacted in 1989 to establish a uniform method for calculating child support awards in New York (Holterman v Holterman, 3 NY3d 1, 9 [2004]). The CSSA, which amended both the Domestic Relations Law and the Family Court Act, represented a “fundamental reform of the child support system in New York to ensure an appropriate and consistent level of support for children” (State Exec Dept Mem, 1989 McKinney’s Session Laws of NY at 2208). The need for uniformity and consistency of child support awards was one of the paramount purposes in enacting the legislation (see Matter of Dutchess County Dept. of Social Servs. v Day, 96 NY2d 149 [2001]; Matter of Lanzi v Lanzi, 298 AD2d 53, 56 [2d Dept 2002]).
Prior to the CSSA’s enactment, child support awards were made in the court’s discretion, guided by a nonbinding list of statutory factors. As a result, “[a]wards var[ied] significantly from county to county and, within same county, even from judge to judge” (State Exec Dept Mem, 1989 McKinney’s Session Laws of NY at 2210; see also Governor’s Mem approving L 1989, ch 567, 1989 NY Legis Ann at 250 [calling child support a “national scandal,” with awards set arbitrarily and varying widely]). The CSSA remedied this inequity by replacing the prior discretionary system with one that affords “ ‘greater uniformity, predictability and equity in fixing child support awards’ ” (Mars v Mars, 286 AD2d 201, 203 [1st Dept 2001], quoting Matter of Cassano v Cassano, 85 NY2d 649, 652 [1995]).
The CSSA provides for “a precisely articulated, three-step method for determining child support” awards in both Family Court and Supreme Court (Cassano, 85 NY2d at 652). Unlike the discretionary system of the past, a court is required to make its child support award pursuant to the CSSA’s provisions (see Domestic Relations Law § 240 [1] [a]; [1-b] [a]; Family Ct Act § 413 [1] [a] [“The court shall make its award for child support pursuant to (the CSSA)” (emphasis added)]; see Dutchess *67 County, 96 NY2d at 155 [“CSSA guidelines must be applied whenever child support obligations are calculated”]).
Under the CSSA’s plain language, only the noncustodial parent can be directed to pay child support. Domestic Relations Law § 240 (1-b) (f) (10) and Family Ct Act § 413 (1) (f) (10) state that, after performing the requisite calculations, “the court shall order the non-custodial parent to pay his or her pro rata share of the basic child support obligation” (emphasis added; see also Domestic Relations Law § 240 [1-b] [c] [7]; Family Ct Act § 413 [1] [c] [7] [“The non-custodial parent shall pay educational expenses, as awarded”]; Domestic Relations Law § 240 [1-b] [g]; Family Ct Act § 413 [1] [g] [“the court shall order the non-custodial parent to pay”]). The mandatory nature of the statutory language undeniably shows that the legislature intended for the noncustodial parent to be the payer of child support and the custodial parent to be the recipient. The CSSA provides for no other option and vests the court with no discretion to order payment in the other direction.
Despite the clear language of the CSSA, the motion court nevertheless concluded that the parties’ shared custody arrangement required a different result. This was error. In Bast v Rossoff (91 NY2d 723 [1998]), the Court of Appeals addressed how child support awards should be calculated in cases involving shared custody. The plaintiff in Bast urged the Court to apply a proportional offset formula which would reduce the plaintiff’s child support obligation based on the amount of time he spent with his daughter. Rejecting that approach, the Court found that neither the legislative history of the CSSA nor the statute itself suggested that the legislature intended to dispense with the requisite formula in shared custody cases.
The Court unmistakably held that the CSSA applies to shared custody cases (Bast, 91 NY2d at 726) and that “child support in a shared custody case should be calculated as it is in any other case” (91 NY2d at 725; see Matter of Commissioner of Social Servs. v Paul C., 73 AD3d 469, 471 [1st Dept 2010], affd 16 NY3d 846 [2011] [shared custody arrangements do not alter methodology of the CSSA]). Specifically, the Court instructed that after completing the three-step statutory formula, “the trial court must then order the noncustodial parent to pay” (91 NY2d at 727). Contrary to the conclusion reached by the court below, Bast leaves no other option than to direct payment by the noncustodial parent to the custodial parent.
To be sure, the Court in Bast recognized that there are “practical challenges” in applying the CSSA to shared custodial *68 arrangements (91 NY2d at 725). Nevertheless, Bast made clear that even in shared custody cases, courts are required to identify the “primary custodial parent” (91 NY2d at 728). Bast explained that “[i]n most instances, the court can determine the custodial parent for purposes of child support by identifying which parent has physical custody of the child for a majority of time” (id.). Only where the parents’ custodial time is truly equal, such that neither parent has physical custody of the child a majority of time, have courts deemed the parent with the higher income to be the noncustodial parent for child support purposes (see Baraby v Baraby, 250 AD2d 201 [3d Dept 1998]).
Courts have uniformly followed Bast, finding that where parents have unequal residential time with a child, the party with the greater amount of time is the custodial parent for CSSA purposes (see Smith v Smith, 97 AD3d 923 [3d Dept 2012]; Matter of Van Buren v Burnett, 58 AD3d 900 [3d Dept 2009]; Rossiter v Rossiter, 56 AD3d 1011 [3d Dept 2008]; Matter of Jennifer H.S. v Damien P.C., 50 AD3d 588 [1st Dept 2008], lv denied 12 NY3d 710 [2009]; Matter of Ambrose v Felice, 45 AD3d 581 [2d Dept 2007]; Matter of Minter-Litchmore v Litchmore, 24 AD3d 932 [3d Dept 2005]; Gainey v Gainey, 303 AD2d 628 [2d Dept 2003]; Matter of Sluck v Sluck, 266 AD2d 764 [3d Dept 1999]; Matter of Borowicz v Mancini, 256 AD2d 713 [3d Dept 1998]).
Here, given the schedule set by the court’s custody decision, there is no question that the father has physical custody of the child for a majority of the time and should be considered the custodial parent for child support purposes. Based on the custody order, for the July 2012 to June 2013 time period, the child will spend 206 overnights with the father compared to 159 with the mother. Thus, the child will be with the father for a majority of the time (56%), and with the mother a minority of the time (44%). The extra 47 days the child spends with the father translates into nearly 30% more than the mother’s time. Put another way, the child is with the father approximately 130% of the time he is with the mother. The great disparity in overnights here — 56% to 44% — stands in marked contrast to the cases cited by the mother where the parents have equal, or essentially equal, custodial time (see e.g. Barr v Cannata, 57 AD3d 813 [2d Dept 2008]; Matter of Carlino v Carlino, 277 AD2d 897 [4th Dept 2000]; Baraby v Baraby, 250 AD2d at 201).
The court below ignored its own custody schedule when it stated that the parents here share “very nearly equal” physical *69 custody of the child. In an attempt to equalize the custodial time, the court focused on how much “waking, non-school time” the child spends with each parent. In other words, the court suggested that a custodial parent could be identified by calculating the number of waking hours he or she spends with the child. The mother makes a similar argument on appeal, contending that she should be considered the custodial parent because she “sees” the child on a majority of days during the year. For example, she counts a Thursday overnight as two days simply because she saw the child after school on Thursday and again on Friday morning.
This approach was soundly rejected in Matter of Somerville v Somerville (5 AD3d 878 [3d Dept 2004]). In that case, the child spent the majority of custodial time each week with his mother, and the father was ordered to pay child support. The father appealed, claiming that he should be considered the custodial parent because he had physical custody of the child during most of her “waking hours.” The father argued that more weight should be given to daytime than to nighttime hours because a child needs less parental care during the time the child is sleeping. The court denied the father’s objections to the child support order, finding his argument “patently absurd and . . . entitled to no serious consideration” (5 AD3d at 880; see also Matter of Joleene D.R. v Robert J.W., 15 Misc 3d 1148[A], 2007 NY Slip Op 51201 [U] [Fam Ct, Oswego County 2007] [rejecting claim that the court should give less weight to sleeping time]). We reach the same result here and reject the counting of waking hours as a method of determining who is the custodial parent. Although the Court in Bast did not elaborate on what constitutes a “majority of time,” we believe that the number of overnights, not the number of waking hours, is the most practical and workable approach. In Smith v Smith (97 AD3d 923 [2012]), a case directly on point, the Third Department endorsed the use of overnights. In that case, during the school year, the children were with their father 18 out of every 28 nights, and with their mother the remaining 10 nights. For the summer, school recesses and holidays, the parents shared equal parenting time. Despite the fact that the father had the children for the majority of time, the trial court nevertheless designated him the noncustodial parent by virtue of his greater income, and directed him to pay child support. The Third Department reversed that determination, finding that the trial court’s order violated Bast v Rossoff. The court held that
*70 “[i]nasmuch as ‘shared’ custody is not synonymous with ‘equal’ custody and [the father] clearly has physical custody for a majority of the time during the greater part of the year, Supreme Court incorrectly determined that [the father] was the noncustodial parent for child support purposes . . . and erred in directing [the father] to pay child support to [the mother]” (97 AD3d at 924).
There are sound policy reasons why calculating the waking hours spent with each parent should not be the method used to determine who is the custodial parent. Allowing a parent to receive child support based on the number of daytime hours spent with the child bears no logical relation to the purpose behind child support awards, i.e., to assist a custodial parent in providing the child with shelter, food and clothing (see e.g. Higgins v Higgins, 50 AD3d 852 [2d Dept 2008] [food, clothing and shelter costs are inherent to the basic child support obligation]). Furthermore, because a child’s activities are subject to constant change, the number of hours spent with each parent becomes a moving target. Outside of school hours, a child may participate in after-school activities, spend time with a child care giver, be enrolled in tutoring, or attend summer camp. During those times, the child may not be with either parent. The child’s activities may vary day to day and will change as the child ages, unnecessarily creating the need to recalculate the parties’ parenting time and possibly modify the custodial parent designation. Moreover, the use of this type of counting approach could also lead parents to keep their children out of camp or other activities simply to manipulate their time spent with the child so as to ensure that they are designated the “custodial parent” (see Bast v Rossoff, 91 NY2d at 732 [rejecting proportional offset formula because it has undesirable potential of encouraging parents to keep a stopwatch on visitation]). An hour-by-hour analysis of custodial time is just not workable and would run afoul of the “greater uniformity [and] predictability” the CSSA was designed to promote (Cassano, 85 NY2d at 652).
The dissent misconstrues the reality of the motion court’s custody schedule, stating that the child does not spend significantly more time with the father. In fact, as noted above, the father has 56% of time with the child compared to 44% for the mother — an almost 30% difference. Thus, the child spends significantly more time with the father, making the father the custodial parent for child support purposes. The dissent’s reliance upon Redder v Redder (17 AD3d 10 [3d Dept 2005]) is *71 misplaced. In Redder, the parties had substantially the same amount of custodial time with the children, which is not the case here.[2]
In justifying its departure from the CSSA, the motion court placed undue emphasis on an isolated phrase in Bast v Rossoff. As noted above, Bast explained that “[i]n most instances,” the custodial parent can be determined by identifying which parent has physical custody for a majority of time (91 NY2d at 728). The motion court interpreted the phrase “[i]n most instances” as allowing it, in a proper case, to designate a parent who had the minority of time with the child as the custodial parent for child support purposes. There is no support in the case law for this reading of Bast. The more reasonable interpretation is that the Court recognized that there may be situations where it cannot be determined who has the child the majority of time, such as equal custody cases, or where the child is not residing with either parent for a majority of time because the child is away at college or at a boarding school.
In finding that the father could be considered the noncustodial parent, the motion court improperly focused on the parties’ financial circumstances rather than their custodial status. In doing so, the court endorsed an approach where the determination of the custodial parent is based not on whom the child spends the majority of the time with, but instead on which parent has the lesser monetary means. No matter how well-intentioned the court may have been, neither the CSSA, nor Bast v Rossoff, allows for economic disparity to govern the determination of who is the custodial parent where the custodial time is not equal.[3]
The dissent ratifies the motion court’s approach, concluding that courts have the discretion to alter the methodology of the *72 CSSA in “rare” or “unique” cases. These words appear nowhere in the CSSA, and no appellate court has ever held that financial need can be a basis for determining custodial status where one parent has the child for the majority of time. In any event, there is nothing particularly “rare” or “unique” about this case. It is not uncommon for one parent to have substantially more money than the other parent, or for the parent of a young child to have stopped working outside the home during the child’s early life. Nor is it unusual for parents, such as those here, to have a shared custody arrangement. It also is not unique for parents, after a few years, to split up, and for a parent to face the prospect of finding employment as the child ages.
There is no support for the mother’s argument that in shared custody cases, a court has the discretion to determine the custodial parent based on what is “just” and “appropriate.” The exercise of judicial discretion in child support awards is narrowly circumscribed, and the CSSA allows for only two methods of deviating from the statutory formula. First, Domestic Relations Law § 240 (1-b) (f) and (g) provide that if the noncustodial parent’s child support obligation is found to be “unjust or inappropriate,” after review of 10 enumerated factors, the court shall order the noncustodial parent to pay an amount it finds “just and appropriate” (see also Family Ct Act § 413 [1] [f], [g]). Second, under Domestic Relations Law § 240 (1-b) (d), if the basic child support obligation would reduce the noncustodial parent’s annual income below certain poverty or self-support reserve guidelines, the noncustodial parent’s child support obligation can be reduced to as little as $25 a month, or, in an appropriate case, be entirely eliminated (see also Family Ct Act § 413 [1] [d]).
Contrary to the mother’s view, these limited exceptions are inapplicable to the situation here. They merely permit a court to reduce or eliminate the child support obligation of a noncustodial parent who may be financially burdened by the presumptive amount of child support (see e.g. Gainey v Gainey, 303 AD2d at 630; Carlino v Carlino, 277 AD2d at 898). They do not vest the court with discretion to ignore the statutory scheme and direct that a custodial parent pay, rather than receive, child support.
In reaching its decision, the dissent speculates that without an award of child support to the mother, the child here would live “in or near poverty” during the time he spends with his mother. We need not analyze the parties’ financial circumstances because the question of who is the custodial parent here turns *73 on an evaluation of the number of overnights, and not on economic need. We note, however, that the motion court’s decision contains only a cursory discussion of the mother’s future financial circumstances and future earning ability. The record provides no basis to conclude that the mother, who has a postgraduate education and who has worked before, cannot provide a reasonable quality of life for the child when he is with her. Even if we sympathize with the mother’s difficulties in covering the cost of housing in New York City, under the current CSSA, we cannot provide a remedy by giving her child support when she is not, in reality, the custodial parent.
The mother’s reliance on statutory and case law from other states cannot guide our decision here. That the mother might have fared better under a different state’s law has no bearing on the issue before us. As noted in Bast v Rossoff, New York’s legislature expressly considered, and rejected, the types of child support methodology the mother advocates (see Bast, 91 NY2d at 732 [observing that the proportional offset formula is currently used by other states only because the legislatures of those states expressly adopted it]).
Although the dissent claims otherwise, the approach it advocates would allow a court to abandon the CSSA whenever it feels that an unfair result would occur. The dissent’s view, if adopted, would create a “discretionary approach for a whole class of cases” (Bast at 728), and would herald a return to the same nonpredictability and nonuniformity the CSSA was enacted to rectify. If a remedy is required for a situation such as the one here, it must come not from this Court, but from the legislature. Accordingly, the order of the Supreme Court, New York County (Ellen Gesmer, J.), entered March 8, 2012, which, to the extent appealed from, denied defendant father’s motion for summary judgment dismissing plaintiff mother’s cause of action for child support, should be reversed, on the law, without costs, the motion granted, and the cause of action dismissed. The order of the same court and Justice, entered July 19, 2011, which, after a trial, awarded defendant father primary physical custody of the parties’ child during the school year and legal custody with respect to medical and educational decisions, should be affirmed, without costs.

. The complaint also contains a cause of action, not relevant to this appeal, alleging that the father breached a promise to provide support to the mother. Throughout the parties’ relationship, the father provided financial assistance to the mother and the child. In March 2008, the father reduced the level of support in light of the end of their relationship and the mother’s refusal to obtain employment despite the child’s being in school full-time.

. Holterman v Holterman (3 NY3d 1 [2004]), discussed by the dissent, involves an entirely different question than the one at issue here. Holterman addressed whether the father’s child support obligation should be adjusted to account for certain distributive award payments he was obligated to pay the mother. The case did not involve the question presented here as to how to determine the custodial parent for child support purposes.

. The use of economic factors in determining custodial status might prove unwieldy for self-represented litigants because it could turn a relatively straightforward determination of custodial time into a full-blown financial trial. Such a result would be contrary to the policy goals of reducing the cost and length of matrimonial and support proceedings (see New York State Matrimonial Commission, Report to the Chief Judge of the State of New York [Feb. 2006], available at http://www.nycourts.gov/reports/matrimonialcommission report.pdf).