Matter of Liu v Ruiz (2021 NY Slip Op 06089)





Matter of Liu v Ruiz


2021 NY Slip Op 06089


Decided on November 09, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 09, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Angela M. Mazzarelli Peter H. Moulton Lizbeth González Bahaati E. Pitt


Index No. 161352/20 Appeal No. 14319 Case No. 2021-00415 

[*1]In the Matter of Nannan Liu, Petitioner-Appellant,
v
Jeanette Ruiz, in Her Official Capacity as Administrative Judge of the New York City Family Court and Stephen Langone, Respondents-Respondents.



Petitioner appeals from the judgment of the Supreme Court, New York County (Laurence L. Love, J.), entered February 1, 2021, denying as moot the petition to compel respondent Jeannette Ruiz, in her official capacity as Administrative Judge of the New York City Family Court, to comply with the obligations set forth in Family Court Act § 439(e) and for attorneys' fees pursuant to CPLR 8601(a) and dismissing the proceeding brought pursuant to CPLR article 78.




Orrick, Herrington & Sutcliffe LLP, New York (René Kathawala of counsel), for appellant.
Letitia James, Attorney General, New York (Grace X. Zhou and Steven C. Wu of counsel), for respondents.



MAZZARELLI, J. 


In Matter of Solla v Berlin (106 AD3d 80 [1st Dept 2013], revd on other grounds 24 NY3d 1192, 1196 [2015]), this Court determined that, under the State Equal Access to Justice Act (State EAJA) (CPLR 8600 et seq.), the plaintiff or petitioner in an action or proceeding against the State is considered to have "prevailed" for purposes of collecting attorneys' fees if commencement of the litigation "catalyzed" the State into voluntarily offering to him or her, in substantial part, the relief that he or she was seeking. We determined that the "catalyst theory" gave life to what we identified as the purpose behind the statute, which was "to level the playing field for those without the necessary resources to challenge State action through litigation" (24 NY3d at 85). The Court of Appeals reversed our decision in Solla because it found that, in that case, the State did not actually change its position. However, it explicitly declined to decide whether the catalyst theory is available as a method of recovering attorneys' fees under the State EAJA. Here, the State argues that this Court misinterpreted the State EAJA in Solla and calls on us to reject our earlier decision. For the reasons that follow, we decline to do so. We further hold that petitioner was the prevailing party for purposes of recovering her fees and that the petition was improperly dismissed as moot.
This matter was before us once before, in Matter of N.L. v S.L. (188 AD3d 491 [1st Dept 2020]). According to the factual recitation in that decision, in March 2012 respondent father was ordered to pay monthly child support and a retroactive lump-sum award to petitioner mother. In December 2012, the mother filed a violation petition, asserting that the father had willfully violated the support order because he had made none of the required payments. For various reasons, the mother's petition was not decided until seven years later, on November 15, 2019, at which time the Support Magistrate found that the father had willfully failed to pay a total of $830,668.37 in child support and recommended that he be incarcerated for six months unless he paid a purge amount of $84,000 by December 16, 2019. On December 16, 2019, the father paid the purge amount, but on December 20, 2019, the mother filed objections, arguing that the amount [*2]was insufficient, and asserting that the Support Magistrate should have set a payment schedule. The Family Court denied the objections on February 3, 2020, determining that the Support Magistrate's recommendations had been "implicitly 'confirmed'" when the purge amount was accepted by another Family Court judge in lieu of an order of commitment, and thus denied the objections as not properly before the court (188 AD3d at 492). The mother appealed, and this Court reversed and remanded the matter for consideration of the mother's objections on the merits.
On February 5, 2020, petitioner filed another child support violation petition in Family Court seeking to enforce child support arrears against the father. On October 15, 2020, after a hearing, the Support Magistrate issued findings of fact, concluding that the father did not willfully violate the child support order. On November 13, 2020, petitioner served her objections to the findings of fact and, on November 24, 2020, the father served his rebuttal. Pursuant to Family Court Act § 439(a), a ruling on the objections was required to be issued no more than 15 days later. However, a Family Court judge had not even been assigned to the matter when that period of time elapsed. On December 28, 2020, the mother commenced this proceeding by order to show cause, pursuant to CPLR 7803(1). The petition sought mandamus relief against Judge Jeanette Ruiz, in her official capacity as Chief Administrative Judge of the New York City Family Court (CAJ), to compel a decision on the mother's objections, in compliance with Family Court Act § 439(e). The mother asserted that because the subject child, now 15 years old, is autistic and has more than $8,000 in monthly expenses, not receiving child support was "crushing." Petitioner also sought reasonable counsel fees under CPLR 8601(a), including as "a catalyst to obtaining finally a decision on the objections."
On January 5, 2021, the same day the order to show cause was signed, Judge Valerie Pels was assigned to the underlying support proceeding. On January 19, 2021, 14 days after the matter was assigned to her, Judge Pels issued a favorable decision on the mother's pending objections, finding that the evidence established that the father had willfully violated the 2012 support order, and that an order of commitment was appropriate. Three days later, the State, on behalf of the CAJ, cross-moved to dismiss this proceeding, on the basis that it was moot since the mother had received the requested relief, and, on the merits, that the CAJ had discretion to manage the Family Court's docket as she saw reasonably fit during the COVID-19 pandemic. The article 78 court denied the petition as academic and dismissed the proceeding as moot, and declined to award counsel fees.
Preliminarily, we must determine whether the petition was properly dismissed in light of the Family Court's having ruled on the underlying objections. The mootness doctrine ordinarily applies to deprive [*3]a court of the ability to review a case where, as here, a change in circumstances between the parties has eliminated the controversy that once existed (see Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d 165, 172 [2002]). However, an exception exists where the case presents "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]). The mother argues that the issue presented here is likely to occur again, and to evade review, because it is not even the first time in this proceeding that the Family Court has violated Family Court Act § 439(e)'s 15-day rule. After all, the Family Court did not issue any determination on the mother's December 2019 objections until over one month later. The mother further notes that section 439(e) will likely be implicated again in this proceeding, given the father's willful indifference to his support obligations. The mother also asserts that in cases other than her own it is routine for the Family Court to disregard the mandatory deadline. She adds that, because of the ease with which a court can resolve a parent's attempt to force a ruling on her objections to a final support order, it is likely to evade review. Finally, she claims that the question is significant because it is critical to parents seeking to enforce support obligations that resolution be achieved in a quick and efficient manner.
We agree with the mother that the mootness exception applies. The mother has established that this is not the first time in this case that the issue has arisen. Further, the issue is not likely to be resolved without application of the exception, because the Family Court can so easily obviate it by issuing a decision on the objections, albeit after the expiration of the 15 days. Courts have applied the exception under similar circumstances (see Matter of Elizabeth C. [Omar C.], 156 AD3d 193, 202 [2d Dept 2017]; Matter of Lucinda R. [Tabitha L.], 85 AD3d 78, 83-84 [2d Dept 2011]). Those cases involved Family Court Act § 1028, which requires that the Family Court hold a hearing within three days of an application to return a child who has been removed from the home. Each case was rendered academic because in Matter of Lucinda R. the child was returned to the home after the three days had elapsed but before the court could determine the appeal, and in Matter of Elizabeth C. the father, who challenged his own removal from the home, was permitted to return after the appeal had been submitted. Nevertheless, the court found in each case that the issues presented were not uncommon in Family Court, and decided them.
We also find that the mother raises an important and substantial question. Whether the Family Court is actually mandated to decide [*4]objections to support orders within the short time frame set forth in the statute is not a trivial one. Parents relying on support payments or ordered to make them should know if finality on the amount in question will be forthcoming within days, months or years of the issuance of a final support order, since the answer might have a profound effect on choices they make. We disagree with the CAJ that in Matter of Martinez v DiFiore (188 AD3d 605 [1st Dept 2020], lv dismissed in part, denied in part 37 NY3d 1012 [2021]) this Court decided that a court cannot issue a writ of mandamus under the circumstances presented here. That case was distinguishable in that it dealt with Uniform Rules for Family Court (22 NYCRR) § 205.43, which imposes a 90-day deadline from the date of the summons by which support magistrates "must" conclude a hearing to determine willful nonpayment of child support. This Court observed that, through its allowance for adjournments for good cause shown, the rule permitted judges and magistrates to exercise discretion to extend the time when the 90-day rule could not possibly be adhered to. Our decision relied on the notion that "[a] writ of mandamus lies 'only to enforce a clear legal right where the public official has failed to perform a duty enjoined by law'" (188 AD3d at 606, quoting Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018], cert denied 587 US _, 139 S Ct 2651 [2019]). The statute at issue here, which leaves no room for discretion, is a provision that "enforce[s] a clear legal right."
Having decided that the mootness exception applies, we further determine that Family Court Act § 439(e) was violated in this instance. The statute is mandatory insofar as it plainly states that the court "shall," within 15 days of an objection to a support award being fully submitted, issue a ruling on it (see Rubin v Della Salla, 107 AD3d 60, 67 [1st Dept 2013] [interpreting the word "shall" as "undeniably" reflecting "the mandatory nature of the statutory language" at issue]). The CAJ disagrees that the mandate in the statute applies to the scenario presented here, because it is directed to the court itself, not court administration. Surely, however, the legislature's intention that the court act in a timely fashion presupposed that the administrator would have assigned a judge to hear the matter. To adopt the CAJ's argument would leave a gaping hole in the statutory framework that would defeat the implicit goal of promoting speedy resolution of support matters.
We now turn to the question whether the mother is entitled to her attorneys' fees on the basis that her commencement of this proceeding catalyzed the desired outcome, that is, a ruling on her objections. In Solla, the disabled petitioner commenced an article 78 proceeding against New York City and New York State after a portion of her public assistance benefits were reduced. The relevant agencies reversed their determination within [*5]two weeks of the filing of the petition. This Court reversed the decision dismissing the proceeding as moot, and remanded for calculation of the petitioner's attorneys' fees. This Court interpreted the State EAJA as continuing to permit a prevailing party to recover attorneys' fees under the catalyst theory, notwithstanding that the United States Supreme Court had decided, in Buckhannon Bd. & Care Home, Inc. v West Virginia Dept. of Health & Human Resources (532 US 598, 601 [2001]), to no longer apply the catalyst theory to federal statutes awarding attorneys' fees to a prevailing party. The State argued in Solla that, since the State EAJA was modeled on the federal EAJA, Buckhannon eliminated the availability of the catalyst theory under the state statute. Solla noted that the state law was explicitly intended to be "similar" to its federal counterpart, but that there was no indication that it was intended to be identical (Solla, 106 AD3d at 86-87). Indeed, this Court observed significant differences between the State EAJA and the federal EAJA that militated against applying Buckhannon to the state statute. First, the state law was narrower than the federal law in limiting the types of litigants who could be ordered to pay attorneys' fees to individuals with a specified maximum net worth and businesses with a specified number of employees. While the State argued that this indicated that the legislature was seeking to make it harder to collect fees and thus suggested that the catalyst theory was not available, we held that the fact that the legislature took specific steps to limit litigants' ability to recover suggested that it had given thoughtful consideration to all of the possible avenues to doing so, including eliminating the catalyst theory, and thus could be presumed to have opted to make only the changes that ended up in the final version of the legislation (id. at 87).
We further observed in Solla that the state law differed from the federal EAJA because it provided a definition of the term "prevailing party" (id. at 88). Thus, while the Supreme Court in Buckhannon had to draw on its own precedents to conclude that attorneys' fees were only available to a litigant that secured an order or judgment against another party, this Court could parse a definition that the legislature had actually written. That definition said nothing about judicially declared relief; it merely stated that a "prevailing party" was one that "prevailed," which this Court noted is ordinarily defined as having effectuated a desired outcome, without any necessity for a "judicial imprimatur" (id.). Finally, we identified a third difference between the state and federal statutes, which was that the term "final judgment" in the State EAJA, used to measure the time from which a party had 30 days to apply for fees, included a "settlement." The Solla Court contrasted this with the federal law, which explicitly defined "final judgment" as including an "order of settlement[*6]" (id. at 89 [emphasis supplied]).
The CAJ argues that Solla was "abrogated on other grounds" by the Court of Appeals. It is true that Solla was reversed because the Court held that the State was not "prompted into action" by the petition in that case (Solla v Berlin, 24 NY3d 1192, 1195 [internal quotation marks omitted]). However, this Court's decision was not abrogated; to the contrary, the Court of Appeals stated that "[i]t is unnecessary for us to decide whether the catalyst theory is New York law, and we take no position on that question this time" (id. at 1196). And while the other judicial departments have decided not to recognize the catalyst theory, the theory remains the law of this Department, based on the reasoning in Solla. Respondent challenges our decision in Solla on the merits, but does not offer any arguments that we did not previously consider when the case was before us, nor does respondent identify any cases from this Court or the Court of Appeals calling the holding in Solla into doubt. We note that the Court of Appeals, in a case that post-dated its own decision in Solla, and that recognized the State EAJA as a remedial statute, stated that "limitations should not be read into such remedial statutes unless the limitations proposed are clearly expressed" (Kimmel v State of New York, 29 NY3d 386, 397 [2017][internal quotation marks and brackets omitted]). Although Kimmel did not involve the catalyst theory, it supports this Court's reasoning in Solla as to why the catalyst theory is available under the State EAJA. Based on the reasoning employed in Solla, we reaffirm our holding in that case.
The CAJ claims that, even if the mother was a "prevailing party" under the catalyst theory, fees are still not available to her because the delay in the ruling on her objections was substantially justified. The CAJ preliminarily contends that she is an inappropriate target of the mother's petition, because the CAJ had no right or authority to micromanage the proceeding in which the mother brought her objections. But that is not what the mother's petition sought; rather, the mother sought to compel the CAJ to enforce the Family Court's compliance with rules that are mandatory and that did not leave any room for the court to exercise discretion.
The CAJ next contends that there was substantial justification for the delay because the deadline in question was implicitly suspended by executive and administrative orders formulated in response to the COVID-19 pandemic. These included Executive Order No. 202.8, issued by former Governor Andrew Cuomo on March 20, 2020, which provided that during the pandemic "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including . . . the family court act . . .is hereby tolled." This language does not help the CAJ because the time for the court to rule on objections in [*7]a proceeding like this one that had already been "commenced" and where the operative documents had already been "filed" and "served" was not affected by the Governor's order. Respondent maintains that this interpretation is too narrow and that the executive order applies to any and all time limitations imposed on the courts themselves. For example, she points to Executive Order 202.28, which modified 202.8 by, inter alia, specifying that a court could consider COVID-19-related difficulties in empaneling grand juries in criminal cases as an element of the "good cause" showing necessary to extend the time a defendant can be detained pending disposition of a felony complaint. However, the modifications contained in Executive Order 202.28 apply, on their face, only to the Criminal Procedure Law and have no impact on the Family Court Act. In any event, we are not convinced that the language employed in Executive Order 202.28 suggests that 202.8 was intended to apply to all time limitations, as opposed to limitations on the time within which litigants were required to make certain court filings.
Finally, the CAJ asserts that support matters were deemed not "essential" under various administrative orders, and therefore conferred upon the CAJ the discretion to give other matters priority over support matters. The administrative orders in the record do not support this claim. For example, the CAJ, citing to Administrative Order 68/20, issued on March 16, 2020, asserts that Family Court was limited to "'[e]ssential matters as the court may allow." However, according to that order, "support orders" constitute "[e]ssential matters." Moreover, according to the Family Court's "COVID-19 Phase 4 Operations Summary," in effect on July 31, 2020, months before the Support Magistrate issued the findings of fact and petitioner filed her objections in the underlying action, the Family Court was directed to continue hearing motions and stipulations on pending and completed support cases.
Because the CAJ responded to the mother's petition by assigning a Family Court judge to rule on her objections, and because the CAJ offers no substantial justification for not having enforced Family Court Act § 439(e) before the petition was filed, the matter should be remanded for an assessment of the mother's attorneys' fees under the State EAJA.
Accordingly, the judgment of the Supreme Court, New York County (Laurence L. Love, J.), entered February 1, 2021, denying as moot the petition to compel respondent Jeannette Ruiz, in her official capacity as Administrative Judge of the New York City Family Court, to comply with the obligations set forth in Family Court Act § 439(e) and for attorneys' fees pursuant to CPLR 8601(a) and dismissing the proceeding brought pursuant to CPLR article 78, should be reversed, on the law, without costs, the petition reinstated and the matter remanded for further proceedings in accordance herewith.
Judgment, Supreme Court, New York County (Laurence [*8]L. Love, J.), entered February 1, 2021, reversed, on the law, without costs, the petition reinstated and the matter remanded for further proceedings in accordance herewith.
Opinion by Mazzarelli, J. All concur.
Manzanet, J.P., Mazzarelli, Moulton, González, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 9, 2021